### CENTRAL TRUST CO. OF NEW YORK et al. v. INGERSOLL.

(Circuit Court of Appeals, Sixth Circuit. May 16, 1898.)

1. CREDITORS' BILL—ATTORNEY'S FEES.

After the sale of railroad property under a mortgage foreclosure suit consolidated with a creditors' bill, an order of reference was made to ascertain what property was not covered by the mortgage. In this order the special master was directed to notify appellee as counsel for the unsecured creditors. *Held*, that such order, made in the presence of counsel for other unsecured creditors, was sufficient to justify him in representing the creditors in the proceeding before the master, and to entitle him to fees out of the funds made, subject to the payment of the unsecured creditors.

2. SAME.

The fact that the parties opposing such allowance owned a very large proportion of the unsecured debts allowed out of such fund was of no effect, where such claims were not filed until after the special master had ascertained and reported the property subject to the unsecured debts. Nor was it material that such opposing parties had bought or owned part of the debt which the counsel represented.

3. ATTORNEY'S FEES—REVIEW.

Where an allowance of $2,500, as attorney's fees, was recommended by the special master, but the sum was increased by the court to $3,300, *held*, that the allowance, though liberal, would not be disturbed on appeal.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This was a creditors' bill by Samuel Thomas against the East Tennessee, Virginia & Georgia Railway Company, which suit was consolidated with the foreclosure suits of the Central Trust Company of New York against the same defendant. Henry H. Ingersoll filed an intervening petition for attorney's fees. From the decree allowing such compensation, this appeal is taken.

The record is a voluminous one in this case, but the facts material to the disposition of the present appeal are, briefly, these: Samuel Thomas filed his bill against the East Tennessee, Virginia & Georgia Railway Company, June 24, 1892, in which he claimed that he was a creditor of that company, owning a floating debt of over $400,000, and alleged, also, that he was a large stockholder. The bill was brought as a creditors' bill for all those who chose to come in. It alleged the hopeless insolvency of the railway company, and that it was liable to be seized for debt, and the railway system dismembered thereby, and the value of the property materially impaired, and asked for a receiver for the railroad property. Receivers were appointed under this bill, and took possession of all the defendant's railway and other property, and operated the road. Subsequently, on the 3d day of March, 1893, the Central Trust Company of New York filed two bills in the same court to

foreclose mortgages on the property of the East Tennessee, Virginia & Georgia Railway Company. The suit of Thomas was consolidated with these suits for foreclosure of the mortgages, and the cause proceeded to judgment, and the property was sold by order of court. At the sale of the property under the decree it was bought in by the committee of reorganization, and the sale confirmed to a new corporation, called the "Southern Railway Company," on the 14th of July, 1894. The suit of Thomas was not prosecuted in the interest of the general unsecured creditors, and nothing seems to have been done in that direction. That bill seems to have been brought and controlled solely to have a receiver appointed, and to prevent waste and the depreciation of the property, and in the interest of the mortgagees, and the compensation of counsel who filed that bill was paid out of the purchase money of the mortgaged property. Prior to the sale of the railway property a number of creditors had intervened in the consolidated cause, and, upon the suggestion of counsel for the unsecured debts that there was property in the hands of the receiver which was not covered by the mortgages, the court, on the day on which the sale of the mortgaged property was confirmed, made an order of reference to Joshua W. Caldwell, Esq., as special master, with direction to ascertain and report what property was not covered by the mortgages and the value of said property, both real and personal. In this order the special master was directed, after notifying W. A. Henderson, counsel for the receivers, and H. H. Ingersoll, counsel for the creditors not secured by mortgage, to hear any proofs offered by either party, and report the result of the investigation. The special master under this reference made investigation, and reported a considerable amount of real and personal estate which had not been covered by either of the mortgages foreclosed, and included therein a short road, about six miles in length, and known as the Tennessee Valley Railroad. The par of the stocks and bonds thus reported was a very large amount, but it was really of little value. The property which was thus reported and subsequently made subject to the unsecured debts was sold, and realized about $50,000. On the 17th of September, 1895, the appellee filed an intervening petition, asking compensation for his services as attorney out of the fund made subject to the payment of the unsecured creditors. This intervening petition was answered by the East Tennessee, Virginia & Georgia Railway Company and the Central Trust Company of New York, in which it was denied that the appellee was entitled to any compensation out of the fund. The court on the same day the petition was filed referred it to H. H. Taylor, as special master, to hear proof and report on the matters of the petition,—whether or not he was entitled to any compensation, and, if so, the amount thereof. The special master, Taylor, heard evidence, and reported on July 3, 1896, that the appellee was entitled to compensation, and fixed it at $2,500. Exceptions were filed to this report by the appellee, and also by the Central Trust Company and the Southern Railway Company and C. H. Coster. The several exceptions were subsequently heard by the court, and the exceptions of the Central Trust Company and others were overruled, and the exception as to the amount of the allowance to appellee sustained, and his compensation increased to $3,300, and that sum allowed him. From this decree allowing said compensation the present appeal has been taken.

H. L. Welcker, for appellants.

T. L. Webb, for appellee.

Before HARLAN, Circuit Justice, TAFT, Circuit Judge, and BARR, District Judge.

BARR, District Judge, after stating the facts as above, delivered the opinion of the court.

The assignment of error raises two questions. It is insisted—First, that the appellee, Ingersoll, is not entitled to any compensation out of the general fund; and, second, if he is entitled to compensation, the compensation allowed is excessive. It seems to us that the order directing the special master, Caldwell, to notify the petitioner, Inger-

soll, as counsel for the creditors not secured by the mortgages, was a recognition by the court of his representative character; and, as it appears that this order was made in the presence of counsel for other unsecured creditors, we think it was sufficient to authorize petitioner, Ingersoll, in the absence of objections from other counsel, to go on and represent the unsecured creditors before the special master, which he did. There is much evidence taken before the special master showing what was done and what was not done by the petitioner, Ingersoll; and the result, we think, is to show that Caldwell, the special master, was himself exceedingly familiar with the whole matter which he was directed to investigate, and that he did some of the work which might have been properly done by counsel, but that Ingersoll was the representative counsel before the special master, and argued the exceptions upon the report, and prepared the necessary orders to subject the property. During this reference the appellants had not filed their claims as unsecured creditors; and the appellants, especially the Southern Railway Company, were claiming as purchasers adversely to the interest of the unsecured creditors. This being true, he is entitled to a reasonable compensation to be paid out of the fund which has been subjected to the payment of the unsecured creditors. Trustees v. Greenough, 105 U. S. 527.

In regard to the amount of the compensation allowed, it would seem from the record before us to be quite liberal; but as the special master reported $2,500, which was the smallest amount proven by any of the witnesses before him, and as the learned trial judge has increased the same to $3,300, we think we should not disturb it. The supreme court, by Justice Bradley, in the case of Trustees v. Greenough, above, said, in speaking of such allowances (page 537):

"The allowances made for these purposes we have examined, and do not find anything therein seriously objectionable. The court below should have considerable latitude of discretion on the subject, as it has far better means of knowing what is just and reasonable than an appellate court can have."

The earnest contention of appellants, that the unsecured debts which they own embrace nearly all of the debt allowed as unsecured debts to participate in the fund arising from the property reported by Caldwell as not being covered by the mortgages, and that, therefore, no allowance should be made out of the fund, should not, we think, have weight. It is true that it appears in the record that over $15,253,000 was allowed as unsecured debts against this fund, and that a very large amount of this—$15,000,000 or over—is owned by the appellants or those in their interest; yet, as almost all of this large debt is composed of mortgage bonds and came in under the supplemental bill filed by the Southern Railway Company, Coster, and others, January 30, 1896, and after the special master, Caldwell, had ascertained and reported the property subject to the unsecured debts, we think the ownership of this large amount of the unsecured debts should not affect the question. It is quite clear that the owners of none of the bonds represented by the trust company and none of the bonds or debts owned or represented by the Southern Railway Company and its associates took part in ascertaining and subjecting the property which was reported and subjected to the unsecured debts;

nor should the fact that the appellant C. H. Coster has bought or owns part of the debt which the petitioner represented make his compensation any the less. The decree of the circuit court should be affirmed, and it is so ordered.