## TEXON OIL & LAND CO. OF DELAWARE v. HANSZEN et al. (No. 1953.)

(Court of Civil Appeals of Texas. El Paso. Feb. 24, 1927. Rehearing Denied March 17, 1927.)

**1. Appeal and error &lt;=&gt;931(1)—Appellate court views evidence in most favorable aspect supporting findings and judgment.**

Court of Civil Appeals will view evidence in its most favorable aspect supporting trial court's findings and judgment.

**2. Attorney and client &lt;=&gt;140—Difficulties and importance of case, amount of work performed, amount involved, benefits to plaintiffs, and character of compensation, should be considered in determining attorneys' fees in suit to recover oil company's assets.**

In determining reasonable value of legal services rendered in suit to recover assets of oil company wrongfully withheld by defendants, there should be considered difficulties and importance of case, amount of work and labor performed, amount involved in litigation, benefits to plaintiffs from results, and character of compensation, whether contingent or fixed.

**3. Attorney and client &lt;=&gt;141—$175,000 held not excessive attorneys' fees, where over $5,-000,000 worth of oil company's assets were restored in litigation.**

$175,000 held not excessive as reasonable value of legal services rendered in suit to recover assets of oil company wrongfully withheld by defendants, where over $5,000,000 worth of assets were restored to company.

**4. Appeal and error &lt;=&gt;936(2)—Lower court's finding as to reasonable attorneys' fees will be upheld, unless injustice clearly appears.**

Appellate courts will not disturb findings in matter of compensation for services of attorneys rendered in conduct of litigation, unless injustice clearly appears, since lower court has better means of knowing what is just and reasonable.

Pelphrey, C. J., dissenting.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by H. C. Hanszen and another against the Texon Oil & Land Company of Delaware and others. From an adverse judgment making an allowance for attorneys' fees, named defendant appeals. Affirmed.

Goggin, Hunter & Brown, Kemp & Nagle and Nealon, Hudspeth & McGill, all of El Paso (C. R. Wharton and Baker, Botts, Parker & Garwood, all of Houston, of counsel), for appellant.

R. L. Batts, of Austin, and Turney, Burges, Culwell, Holliday & Pollard, of El Paso, for appellees.

HIGGINS, J. This is an appeal from a judgment for $175,000 against the appellant, Texon Oil & Land Company, a Delaware corporation, hereinafter called the Texon Company, in favor of Judge R. L. Batts, of the law firm of Batts & Brooks, and Hon. William H. Burges, of the law firm of Turney, Burges, Culwell, Holliday & Pollard, as attorneys' fees for legal services rendered in the above-entitled cause.

The suit was filed in the district court of El Paso county, May 4, 1925, by H. C. Hanszen and J. P. Scranton, minority stockholders of the Texon Company, against said company and certain individual defendants, who were majority stockholders of the company; three of them being directors and officers thereof.

A stockholders' meeting of the company had been called for May 5, 1925, at El Paso, Tex. The plaintiffs sought to have canceled as fraudulent and void 1,400,000 shares of stock in the Texon Company issued to the defendant Cromwell, and for mandatory injunction compelling defendants to permit plaintiffs and all other stockholders to have access to and examine the company's books and records, and for a temporary injunction restraining defendants from holding said meeting until such examination could be made and the court determine whether the parties holding said 1,-400,000 shares of stock were entitled to hold and vote same.

On May 4, 1925, Hon. P. R. Price, judge of the Forty-First district court of El Paso county, made an order restraining the holding of the meeting except to adjourn from day to day, and to show cause on May 6th why the plaintiff should not be permitted to examine the books and records as prayed for.

The defendant company answered by plea to the jurisdiction, and, joined by the other defendants, pleaded in abatement of the action to cancel the Cromwell stock a former suit pending in the United States District Court for Delaware by William A. Schenck, and also answered to the merits.

Additional pleadings were filed, and on May 13, 1925, the court entered a restraining order, and appointed an auditor to audit the

---

books and records of the Texon Company and its subsidiary corporations. This order is rather lengthy. Upon its face it does not disclose it was by consent, but from the record as a whole it appears to have been of that nature, having been made after a hearing beginning on May 6th.

On October 16, 1925, Judge Batts, as attorney for the plaintiffs, and Hon. Nathan I. Sachs, as attorney for defendants, entered into a written agreement to settle the litigation. This agreement is lengthy. It need not be stated in full. Suffice it to say that in September, 1925, a consent decree had been entered in the Schenck suit in Delaware.

The first paragraph of the agreement between Messrs. Batts and Sachs provided that the decree entered in the Schenck suit should be confirmed by judgment in the present action. The fourth paragraph of the agreement reads:

"The expenses of the Texon stockholders' protective committee shall be paid by the Texon Oil & Land Company, which defendant corporation shall also pay the attorney's fees of Batts & Brooks, Esqs., W. H. Burges, Esq., the amount of which fees shall be agreed upon between R. L. Batts, Esq., and C. R. Wharton, Esq., and, if not agreed upon shall be fixed by the presiding judge in the within entitled action."

On November 12, 1925, the plaintiffs filed an amended petition, suing in their own behalf as stockholders of the Texon Company, and in behalf of other stockholders who might join in the action and share the expense thereof. It was alleged that Hanszen was a member of the stockholders' protective committee, naming the other members of the committee, among them being Holland S. Reavis and Daniel J. McAuliffe. This petition named as additional defendants various individuals and four subsidiary corporations of the Texon Company, one of which is the Texon Oil & Land Company of Texas, a Texas corporation. The scope of the litigation and the relief sought was greatly enlarged by the amendment. Judgment was thereupon rendered in accordance with the agreement between Messrs. Batts and Sachs.

The parties having failed to agree upon the amount of attorneys' fees, the matter was submitted to Judge Price, who, having heard evidence upon the issue, fixed the fee at $175,-000, and rendered judgment therefor against the Texon Company. Upon the hearing a great deal of evidence was adduced, mostly oral. The statement of facts upon such hearing covers more than 400 pages.

Upon request of appellant, the trial court filed findings and conclusions.

[1] It is necessary to outline briefly the salient facts disclosed by this voluminous record. The evidence must be viewed in its most favorable aspect supporting the trial court's findings and judgment.

Judge Batts was originally employed about October or November, 1924, by Mr. Holland S. Reavis, of New York, who represented himself and some friends in Pittsburgh and New York, all of whom had bought stock in the Texon Company. These parties had become suspicious of the officers of the company, who had declined to furnish information to which they insisted they were entitled as stockholders. Besides such declination, other matters had served to arouse their suspicion. Reavis came to Austin, and consulted with Judge Batts, laying before him such information as he had, the matters which had aroused suspicion, and the information which had been denied them. Judge Batts accepted employment, and, after much investigation, filed a suit in the United States District Court at San Angelo, Tex., in the name of Daniel J. McAuliffe. The petition in that case is not in the record, and the exact nature of the relief sought is not shown, but it appears from the record as a whole, and is so stated in appellant's brief, the primary purpose of the McAuliffe suit was to obtain a revelation of the facts concerning the property and status of the Texon Company. This was the first suit filed in the litigation. It was never tried, and later dismissed. After the filing of the McAuliffe suit, Judge Batts had a number of conferences with Hon. C. R. Wharton representing the defendants who sought dismissal of the suit. For his services in that suit Mr. Reavis and associates agreed to pay Judge Batts 6,000 shares of Texon Company stock. The negotiations between Messrs. Batts and Wharton relative to dismissal of the McAuliffe suit extended over a considerable period of time without result.

In the meantime notice was given of the stockholders' meeting to be held at El Paso, Tex., on May 5, 1925, whereupon the present suit was brought. Mr. Burges then became associated with Judge Batts in the litigation.

About April, 1925, the stockholders' protective association was formed. It was composed of two groups; one of which was composed of Pettigrew and Meyer of New York, and their associates. The other group was composed of Reavis and his associates.

Prior to the formation of the protective committee, Hon. Arnold L. Davis of New York City and Hon. Warwick M. Downing of Denver, Colo., were counsel for Pettigrew and Meyer and his associates. Mr. Davis was first retained by Pettigrew and Meyer on December 30, 1924. Mr. Downing was employed by the same parties in January, 1925.

On April 27, 1925, a suit in equity was filed in the United States District Court of Delaware by Wm. A. Schenck, against the Texon Company, its subsidiary corporations, and various individuals, some of whom were stockholders, officers, and directors of the Texon Company. Messrs. Davis and Downing were counsel for the plaintiff in that suit.

The McAuliffe suit had been previously brought.

Shortly before the filing of the Schenck suit Mr. Downing conferred with Judge Batts in Austin. At that time Judge Batts gave Mr. Downing the facts which his investigation had disclosed. Mr. Downing left New York for El Paso on April 30, 1925, to attend the proposed stockholders' meeting as the attorney and representative of Schenck, Pettigrew, and Meyer. Arriving in El Paso on May 3d he went into consultation with Messrs. Batts and Burges, and Reavis, Hanszen, McAuliffe, and Skelly, of the stockholders' committee. He remained in El Paso until May 9th, in consultation and co-operation with the parties mentioned, but not actively participating in the litigation which had begun on May 4th, and which was then on trial before Judge Price.

On May 9th he left for Wilmington, Del. He arrived at Wilmington on May 12th. He and Mr. Davis on May 13th presented to Judge Morris an amended bill in the Schenck suit. On the same day Judge Morris entered ex parte an order enjoining the holding of the stockholders' meeting in El Paso, and appointed a temporary receiver to take charge of and impound the Cromwell stock. According to the testimony of Mr. Downing, the action thus taken was with the knowledge and approval of Messrs. Batts and Burges. But, according to the testimony of Batts and Burges, the understanding with Downing when the latter left El Paso for Wilmington was that no action was to be taken in Delaware unless the hearing then in progress in El Paso resulted unfavorably, in which event Mr. Downing was to be wired to invoke the aid of the Delaware court, and that Downing violated this understanding by the action taken in Delaware. It was further shown by the testimony of Batts' and Burges that the interlocutory decree of May 13th entered in El Paso was an agreed one, and, before the agreement was fully consummated, they (Batts and Burges) were advised by wire of the action which had been taken in Delaware; whereupon they immediately advised appellant's counsel of such action; that it was without their knowledge or consent; and, if desired, they were willing to rescind the agreement, but appellant's counsel did not so desire, and the same was consummated by the entry of the decree in El Paso on May 13th.

Thereafter there was no co-operation between the two groups of the stockholders' committee and their respective counsel.

In August, 1925, an agreement was made in Chicago to settle the Schenck suit, which was the basis of a final decree entered therein on September 17th, 1925. Of this agreement and judgment the Reavis group and their counsel, Messrs. Batts and Burges, knew nothing until after the entry of the decree when Judge Batts became advised thereof. He went immediately to Delaware, and prepared a motion to be filed in the federal court to set aside the Schenck decree.

Pending the filing of this motion, Mr. Sachs of New York, one of the defendants and one of their counsel, got in communication with Judge Batts, and negotiated with him the agreement upon which is based the decree rendered in the present suit.

There is some conflict in the evidence as to whether the decree herein is more favorable to the stockholders than the one entered in the Schenck case. There is evidence that it restored more assets to the Texon Company than the Schenck decree. On the other hand, there is some evidence that it was slightly less favorable. This conflict is immaterial, for in no event can there be much difference between the two decrees in the benefits accruing to the stockholders of the Texon Company. Pertinent portions of the trial court's findings and conclusions are as follows:

"I. An agreement was entered into at New York on October 16, 1925, which is in writing, and the fourth article of which reads as follows: [Here follows paragraph 4 of the agreement above quoted.]

"II. I find that as a matter of fact it was the intention of the parties to the said agreement, to wit, Nathan I. Sachs, representing all of the defendants in the litigation, and R. L. Batts, representing the plaintiffs in this action, and himself and W. H. Burges as attorneys in the said action, that all of the expenses of the Texon stockholders' protective committee in the preparation and conduct of the above styled and numbered cause and in the suit heretofore pending in the United States District Court for the Northern District of Texas, entitled D. J. McAuliffe v. Texon Oil & Land Company et al., and the attorney's fees of Batts and Brooks and W. H. Burges in the preparation of the said causes and both of them, and the trial of the said causes, and the negotiations for the settlement of the said causes, should be paid by the Texon Oil & Land Company, and that, in the event of R. L. Batts and C. R. Wharton not being able to agree upon the amount thereof, the amount should be fixed by the undersigned as presiding judge in the above styled and numbered cause.

"III. I find that the claim of R. L. Batts and Wm. H. Burges for compensation covers all services rendered by the firm of Batts and Brooks and the firm of Turney, Burges, Culwell, Holliday & Pollard, from the original employment of Batts and Brooks to and including the entry of the final decree in this case."

"VI. I find that the investigation conducted by, through, and under Batts and Brooks, and Turney, Burges, Culwell, Holliday & Pollard, and the services rendered by them as now covered by the claims of R. L. Batts and Wm. H. Burges, and on which the hearing herein was by me held, were the efficient and moving causes of the settlement by reason of which the decree was entered in the case of Wm. A. Schenck, Plaintiff, v. Texon Oil & Land Company et al., defendants, No. 570 in equity, entered in the United States District Court for the District of Delaware on the 27th day of

September, 1925, as well as the final decree entered in this cause on the 12th day of November, 1925.

"VII. I find that, by virtue of the said settlement and the decrees entered in accordance therewith in the United States District Court for the District of Delaware in the cause hereinbefore referred to and in this cause on said 12th day of November, 1925, quieted the title to and confirmed in the Texon Oil & Land Company of Delaware the title to 637 shares of the capital stock of Group One Oil Corporation of Delaware, of the reasonable value of $4,459,000, on the payment by the Texon Oil & Land Company of the sum of $336,000.

"VIII. I find that the litigation instituted and conducted by the said R. L. Batts and Wm. H. Burges and their associates has resulted in the placing of the title of the real and personal property of the Texon Oil & Land Company of Delaware in the Texon Oil & Land Company of Texas, all of the capital stock of which is now owned by the Texon Oil & Land Company of Delaware, and that such litigation and the investigation of the legal rights of the Texon Oil & Land Company of Delaware and of the stockholders thereof, by the said R. L. Batts and W. H. Burges and those associated with them, have inured to the benefit of the stockholders of the Texon Oil & Land Company of Delaware in at least the sum or value of $5,000,000.

"IX. I find as a fact that a reasonable fee for all services rendered by said Batts and Brooks and R. L. Batts, and by Turney, Burges, Culwell, Holliday & Pollard, is the sum of $175,000, and that such sum will be reasonable compensation for services performed by said attorney in the litigation covered by this settlement and the decrees entered in pursuance thereof.

"X. I find as a matter of fact that the defendant, the Texon Oil & Land Company of Delaware, by its agreement above referred to, executed on the 16th day of October, 1925, and in open court on the hearing before me, admitted its liability to R. L. Batts and Wm. H. Burges for compensation for services in this litigation.

"XI. I find as a fact that, at the time Holland S. Reavis first consulted Judge Batts relative to the affairs of the Texon Oil & Land Company of Delaware, said Reavis being a stockholder therein, and at which time neither of said parties knew anything as to the status of said stock, nor concerning said company, Reavis offered to give to Batts as compensation for the investigation to be made 6,000 shares of the capital stock of said company, which was acceptable to said Batts, but with the understanding and agreement, that, if the result of the investigation was a suit or suits in equity, or in which equitable relief could be granted, in which fees could be allowed by the court out of the property, Batts was to receive such compensation only as might be allowed by the court; that the said Reavis and associates never paid to the said Batts any compensation in any form for services rendered or to be rendered; that no claim or demand was ever made against them, or any of them, by the said Batts for compensation; that it was understood between the said Batts and the said Reavis and associates that such compensation as Batts might receive or be entitled to would be paid out of the properties recovered, and to be recovered, by the said Batts in any proceeding filed or to be filed by him against the Texon Oil & Land Company or its officers and directors; and that all of the services so performed by the said Batts and Wm. H. Burges were performed under such agreement and arrangement with Reavis and associates."

"Conclusions of Law.

"I. The Texon Oil & Land Company, by agreeing to pay the fees due R. L. Batts and Wm. H. Burges, and by its admission in open court of its liability for such fees, became legally bound to pay the reasonable fees due them.

"II. I conclude, as a matter of law, that, as the agreement to pay to Batts by Reavis and associates 6,000 shares of Texon stock was to be effective only in the event that no proceeding was instituted against the Texon Oil & Land Company, or its officers and directors, for an accounting or other relief, but as such suits were actually filed and the proceedings so instituted were necessary for the protection of the stockholders, and as such suits resulted beneficially to the stockholders, the agreement whereby Batts was to receive 6,000 shares of stock was never effective. And, it appearing that the agreement under which Batts was to receive the 6,000 shares of stock had no relation to the litigation actually instituted, and that it was never contemplated that the delivery of said shares of stock should be even considered as part compensation for the services so rendered and to be rendered, I further conclude, as a matter of law, that the agreement relative thereto was and is ineffective for any purpose, and I have not considered the same in fixing the fee which R. L. Batts and Wm. H. Burges are entitled to receive as a result of the litigation and settlement thereof made.

"III. I fix the sum of $175,000 as the amount of compensation to be paid by Texon Oil & Land Company of Delaware to R. L. Batts and Wm. H. Burges under the terms of the settlement of October 16, 1925, and the decrees of the United States District Court for the District of Delaware and this court terminating said litigation."

Appellant's first two propositions assert: (1) This was not an action in which the Texon Company would be primarily liable for expenses and counsel fees incurred by stockholders in litigation conducted in behalf of the company, because the suit was primarily by certain stockholders to obtain control of the internal affairs of the corporation, wherefore its liability for the fees must be based upon the agreement made by the parties on October 16, 1925. (2) If the amount of the fee was not agreed upon by the parties, and the court was called upon to fix the same, then the agreement did not contemplate the fixing of the fee upon the basis ordinarily adopted by courts of equity in allowing fees out of a fund or property which had been recovered or brought under control of the court.

The third and fourth propositions read:

"Third. Judge R. L. Batts having contracted with Holland S. Reavis, a member of the

Texon stockholders' protective committee, for the payment of fees for his services in representing the said Reavis and other stockholders in connection with transactions and litigation concerning the Texas Oil & Land Company of Delaware and its affairs, which .fee was a reasonable and fair one for the services performed in the. filing of this suit and its settlement, being part of and a continuation of such services so contracted for. The amount fixed for attorney's fees should have been in accordance with the contract and agreement between the said Reavis and Judge Batts, and . the court was not authorized to ignore such contract and fix fee upon some other basis.

"Fourth. The fee fixed by the court, and for which judgment was entered, upon whatever basis it may have been fixed, is excessive and unreasonable."

The nature of the suit was not as is assumed in the first proposition. As the litigation finally developed, its main purpose was to recover assets of the company, alleged to be wrongfully withheld from it by certain of the individual defendants, and the final effect of the litigation was the accomplishment of such purpose. The first and second propositions are unimportant, . because contractual liability for the payment of the fee was imposed by the agreement of October 16th. Appellants do not question its validity. Under the agreement the Texon Company became liable to pay the reasonable value of the services rendered by the attorneys. We need not inquire as to the basis adopted by courts of equity in cases where property has been recovered or brought under control of the court. We apprehend, however, that such courts adopt as the basis upon which they fix fees in such cases the reasonable value of the services rendered.

As to the third proposition there is nothing whatever in the agreement to indicate the parties contemplated that the Texon Company should simply pay, in kind or value, the 6,000 shares of stock which Reavis agreed to pay Judge Batts at the inception of the latter's employment for his services in the Mc-Auliffe suit. The agreement evidences the contrary by the stipulation that the amount of the fees should be agreed upon by Judge Batts and: Mr. Wharton, and, if not agreed upon, should be fixed by the presiding judge. Under the trial court's findings of fact, which the evidence amply supports, the third proposition is without merit.

[2, 3] As we view this appeal, the only question presented of importance or difficulty arises upon the fourth proposition. We appreciate that it is of great importance, and have given it careful consideration.

In Japhet v. Pullen (Tex. Civ. App.) 153 S. W. 1188, the court allowed a fee of $10,000 to an attorney who represented minors as their guardian ad litem in litigation which resulted in the recovery by the minors of property valued at about $210,000. An appeal was taken by the minors, who asserted the fee allowed was excessive. In passing upon the question, this court said:

"In determining this question there should be considered the difficulties and importance of the case, the amount of work and labor performed, the amount involved in the litigation, the benefits to the wards from the results of the litigation, and the character of the compensation, whether contingent or fixed. McCallon v.· Cohen [Tex. Civ. App.] 39 S. W. 973; Connellee v. Eastland [Tex. Civ. App.] 31 S. W. 552; Randall v. Packard, 142 N. Y. 56, 36 N. E. 823; Garrigus v. Gilbert, 4 Ky. Law Rep. 1001; Gorman v. Banigan, 22 R. I. 22, 46 A. 38; Eggleston v. Boardman, 37 Mich. 14; Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. Rep. 349; Southern, etc., v. Union, etc., 64 F. 450, 12 C. C. A. 215; 22 Cyc. 667, 668; 15 Am. & Eng. Enc. of Law, p. 14; 3 Sutherland on Dam. (3d Ed.) § 682, p. 2038, and note; Campbell v. Goddard, 17 Ill! App. 385; Trimble v. Railway Co., 201 Mo. 372, 100 S. W. 7; Shoup v. Snepp, 22 Ind. App. 34, 53 N. E. 189; Morrill v. Hershfield, 19 Mont. 247, 47 P. 997."

It was held the fee was not excessive. The services rendered by the guardian were legal services, and the rule there announced is applicable here. The fee here involved should not be fixed purely upon a contingent basis, but every element proper for consideration warrants the allowance of a large fee.

The amount of property involved was enormous in value. There has been restored to the Texon Company at least $5,000,000 worth of assets. The record discloses a tremendous amount of work done by Messrs. Batts and Burges, particularly Judge Batts, who for months devoted practically all of his time to the litigation. The investigation and assembly of the evidence was in large measure done by him. The evidence fully supports the trial court's finding that the investigation and service of Batts and Burges were the efficient and moving causes of the settlement and decree in the Schenck suit in Delaware. The responsibilities resting upon them were heavy and the services rendered demanded legal ability and skill of the highest order. The record in the main action abundantly evidences the ability of counsel; the results obtained speak for themselves. Even under recent standards of value $5,000,000 is an enormous sum, and recoveries of such an amount must be unusual.

[4] An examination of the evidence adduced upon the hearing supports all of Judge Price's findings. He was "thoroughly familiar with the nature, extent, and value of the services rendered, and with all of the matters properly to be considered in fixing the fee, and therefore is in a better position to fix the proper compensation for such services than an appellate court could possibly be." Japhet v. Pullen, supra; Stuart v. Boulware, 133 U. S. 82, 10 S. Ct. 242, 33 L. Ed. 568; Southern, etc., v. Union, etc., supra; Central Trust Co. v.

Ingersoll, 87 F. 427, 31 C. C. A. 41; Trustees v. Greennough, 105 U. S. 527, 26 L. Ed. 1157; Sloan v. Mitchell, 72 F. 89, 18 C. C. A. 443; 34 Cyc. 466 and 474; Whitney v. City of New Orleans (C. C. A.) 54 F. 614.

In the last cited case Judge Pardee said:

"Appellate courts are generally not disposed to disturb the findings of lower courts in the matter of compensation for services of trustees, solicitors, receivers, and masters rendered in the conduct of litigation in said courts, whether based on findings of masters or verdicts of juries, unless injustice clearly appears, for the reason that the court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have."

While the amount awarded in the present case is large, yet the majority does not think it can be said to be excessive or unreasonable in the light of the entire record.

In this connection attention may be called to the fact that appellees in their brief set forth a copy of a decree entered in the Schenck Case in Delaware awarding $200,000 against the Texon Company as counsel fees to the plaintiff's attorneys in that case. This decree was entered about two weeks after Judge Price made the present award. In a written argument filed in this court appellant's counsel say they agreed to the sum fixed in the Delaware decree.

If appellant consented to an award for counsel fees of $200,000 in the Delaware case, then how can this court say that an award of $175,000 is excessive, when the investigation conducted by Batts and Burges and their services were the efficient and moving causes of the settlement made and decree entered in the Schenck case? However, this is matter perhaps outside of the record proper, and we do not base affirmance thereon.

In the opinion of the majority, the record proper sustains the view that the award of $175,000 as attorneys' fees was reasonable when consideration be given to all of the factors entering into a proper determination of the question.

Affirmed.

PELPHREY, C. J. (dissenting). I heartily concur in the holding of the majority as to all questions involved in this appeal except as to the amount of the fee allowed. I fully realize the splendid ability of the gentlemen to whom this fee has been allowed, and frankly concede that the committee could not have selected two more able men in the whole state to represent them.

The rule seems to be that:

"Implied agreements between attorney and client stand upon the same footing as like agreements between other parties. The amount of an attorney's compensation, when not fixed by the terms of his contract with his client, is measured by the reasonable value of the services rendered, not by what the attorney thinks is reasonable, but by the price usually paid to the profession for such services. No regular measure of value can be fixed. Attorneys are generally entitled to recover what they could have obtained under a contract made in advance." 6 Corpus Juris, p. 748.

The following circumstances should be considered in passing on what fee should be allowed: The amount and character of services rendered; the labor, time, and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney; the results secured; and whether or not the fee is absolute or contingent.

As best can be gathered from the evidence, Judge Batts was employed in this case some time during November, 1924, and his employment ended on the 12th day of November, 1925, when the judgment was entered in the district court. The evidence also discloses that Judge Batts was in the hospital for at least 30 days during that time, and that he tried what is referred to as the Hoffman Case.

Granting that he spent all of his time in working on this case from November 1, 1924, until the date of judgment, except the time in the hospital, and we find that he would be compensated for the actual working days at a rate in excess of $550 per day.

Mr. Burges was employed on April 23, 1925, to assist Judge Batts, and his connection with the case continued until judgment.

Applying the rule that "attorneys are generally entitled to recover what they could have obtained under a contract made in advance," the writer feels absolutely confident that either Judge Batts or Mr. Burges would have accepted employment from Mr. Reavis to do the things which were afterwards done in this case for much less than half of the fee allowed.

Judge Batts agreed to accept 6,000 shares of Texon stock which he was at that time informed had a value of $1.25 per share, and which he was at the same time informed might reach $10 per share. The testimony shows that Mr. Reavis offered 5,000 shares, and that Judge Batts asked 6,000, which was finally agreed on. Judge Batts' testimony shows that he spent considerable time and labor in the investigation of this case, but the only actual court work was in filing the McAuliffe suit in the federal court and the present action. The McAuliffe suit was never tried and the only actual trial work done in the present case was the hearing on the injunction issue.

According to Judge Batts, his investigation had left him still at sea, and he was in possession of very few important facts until they

were disclosed in the hearing in the present case.

The writer certainly has no desire to attempt to minimize the labors or ability of the attorneys, but, while holding at their full worth the characters of these splendid lawyers, I feel that the fee allowed by the trial court is an excessive one, and that the trial court, a belief in whose honesty of purpose I here proclaim, abused the discretion imposed in him in its allowance. While not furnishing an absolute criterion, yet by way of comparison we find that the fee allowed by the court in this case is more than eight times as great as the salary of the Chief Justice of the Supreme Court of the United States; that the members of this court receive as their annual salary only one thirty-fifth of that amount; and that the President of the United States receives less than half such amount.

It is contended that appellant, having entered into an agreement to allow the court to fix the fee, is bound by his finding.

As I view it, appellant had a right to presume that the court would, in fixing a fee in the case, be bound by the rules laid down in such matters, and that any allowance made would be a reasonable one.

Great stress has been laid on the amount recovered in this suit, and, while I realize that it is entirely proper to consider it in fixing the fee in this case, yet I cannot agree with the contention that it should bear more weight than the other circumstances. If this were a case in which the fee was contingent upon recovery, then I would readily concede the fee to be a reasonable one, and would hold even a greater one to be reasonable where such a recovery was had, but, under the facts and circumstances of this case, bearing in mind the rules laid down as a guide in such matters, I feel that the fee allowed is unreasonable, and should be reduced to $75,000.