Burwell **KNEBEL** et al., Appellants,

v.

The **CAPITAL NATIONAL BANK IN AUSTIN** et al., Appellees.

No. 11841.

Court of Civil Appeals of Texas, Austin.

June 30, 1971.

Rehearing Denied July 21, 1971.

Russell J. Horn, Byron Lockhart, Austin, for appellants.

Sneed, Vine, Wilkerson & Selman, Louis Scott Wilkerson, Carl C. Hardin, Jr., Peter P. Zaremba, Hart, Keahey & Hart, James P. Hart, Austin, for appellees.

SHANNON, Justice.

This appeal involves construction of the will of Edmund Perry Knebel who died September 5, 1965. The will, executed on November 1, 1955 and duly probated in Travis County, named The Capital National Bank in Austin as Independent Co-Executor in which capacity the bank filed a declaratory judgment action to construe the will.

In the residuary clause of the will, Knebel, afterwards called "testator" created a testamentary trust, upon termination of which, forty eight percent of his residuary estate was to be divided among eight named relatives and in-laws whom he listed under a "Group No. 1" heading. Under a "Group 2" heading, the remaining fifty two percent of the residue was to be divided among ten other persons in varying percentages. After the name of one person in Group 2 the testator added the term, "my general manager," and after the names of each of the other nine persons in Group 2 he added the term, "my employee."

At issue here is the construction of the sentence in the next paragraph of the will which reads as follows: "If any of the foregoing persons who are designated as employees are not employed by me at the time of my death, the bequest to such person shall be void and of no effect, and the share of my estate which such person otherwise would have received shall be distributed among the remaining beneficiaries in Group 2 in proportion to the percentages allotted to them."

When the testator executed the will he was operating a soft drink bottling business as a sole proprietor, but at the time of his death that business was incorporated. It is appellants' position that since at the time of the testator's death his business was a corporation that the testator had no "employees," and that, consequently, the gift to Group 2 failed and that portion of the estate passed by intestacy.

There were nineteen parties in the trial court. For purposes of this opinion it is sufficient to say that the appellants are primarily those persons or their relatives in Group 1, while the appellees are the bank and those persons named in Group 2 with the exception of Alfred Kroll, Alice Lane and Janie Belle Marney.

The District Court after a trial without a jury entered judgment declaring that the will effectively provided for a testamentary trust, and also terminating the trust and vesting the beneficial interests therein among those persons entitled in Group 1 and Group 2. Upon request the court filed findings of fact and conclusions of law.

Appellants attack the court's judgment by five points of error. The first is that the court erred in holding that fifty two percent of the estate did not pass by intestacy because the language "employed by me," is unambiguous and requires the exclusion of the beneficiaries in Group 2, while the second and third points are that the court erred in holding that fifty two percent of the estate did not pass by intestacy because the competent and material evidence conclusively established, or alternatively, the overwhelming weight and preponderance of the competent and material evidence established that none of the persons listed in Group 2 were employed by the testator at the time of his death. Appellants' fourth point is that the Group 2 beneficiaries are estopped to contend that they were employed by the testator at the time of his death. Appellee's last point is that the court erred in disallowing attorney's fees.

As in all will construction cases, the purpose here is to ascertain the intent of the testator. To this end the court properly permitted extrinsic evidence to discover the testator's intent as to the meaning of the words actually used in the will. Hawes and Duncan v. Foote, 64 Tex. 22 (1885). See Haupt v. Michaelis, 231 S.W. 706 (Tex.Com.App.1921). The court held that all those persons named in Group 2 were regarded by the testator and were in fact "employed by" him at his death within

the meaning and sense of those words as used in the will.

We hold that the court's judgment is fully supported by probative evidence. For many years before 1955 the testator had been in the soft drink bottling business as a sole proprietor, and during those years he hired those persons named in Group 2 to work in that business. Under their arrangement, the testator had the right to control and did control in every respect their work. Henry V. Ramsey, the testator's accountant, had worked in high school, during summers in college, and afterwards as a bookkeeper for the testator. Ramsey testified that the testator did all the hiring, was definitely at the top, and was the "boss." Witness Henry H. Kuempel, one of those persons named in Group 2, began working for the testator in Pflugerville at his confectionery and tailor shop in about 1925 when Kuempel was about thirteen or fourteen. In 1927 or 1928 the testator moved to Austin to set up the bottling business. Kuempel went to Austin and worked at that business to and through the date of the testator's death. Kuempel testified that the testator told the men what to do, and who was to work at the plant and who was to run the routes. The witness said further that the testator and the men worked as a team, and the testator was the "captain."

In 1962 after consultation with Ramsey, the testator decided to incorporate his bottling business, and to give an interest to four employees, Henry H. Kuempel, John C. Munro, Graham Wright and Willis Moses. The details of the incorporation and gift were left up to Ramsey and an attorney because the testator was not educated in matters of corporate law. Although tax considerations were a factor, according to Ramsey, the testator was "interested in seeing that his business continued on if anything ever happened to him." In October, 1962 the testator had the four employees stay after work to meet with Ramsey. Those four persons were then told of the testator's wishes. The testator's plan was to convey the personal property used in the bottling business to the new corporation in consideration for a promissory note of $175,000.00 from the corporation and the assumption by the corporation of a substantial amount of the testator's notes and accounts payable. At the meeting the testator and two of the employees executed the articles of incorporation which articles were filed with the Secretary of State. The testator then executed a bill of sale to the corporation, and caused the corporation to execute and deliver the promissory note. Later the testator caused fifty shares of capital stock to be issued by the corporation, 25 shares to him as testator and the balance to the four above mentioned persons. According to Ramsey there was no discussion at the meeting about the effect of incorporation in the contractual relationship between the testator and the men working in the business. Besides the four who attended the meeting, none of the other men in the business was told about the incorporation.

The record supports the finding of the court that those persons named in Group 2 remained as much the employees of the testator as they had before incorporation. The testator continued to be the "boss" of the operation until his death, and the actual conduct of the corporation was under his effective control. The corporation never hired or employed by contract the men working at the business, and they just "kept on working" as before, which was doing whatever the testator told them. As witness, Willis Moses said the business kept running the same way after incorporation as before with every one keeping the same job. The testator kept on running the business by setting the salaries and telling people what to do. Moses' job was keeping books, but he explained that if the testator had told him to wash bottles he would have done so. As witness John C. Munro explained, after incorporation, the men working at the business continued at their work on whatever basis they had agreed with the testator when they first got hired, and after incorporation, no one

ever overruled any of the testator's decisions as to how the business was operating.

After incorporation, the evidence was that the testator continued to regard those persons in Group 2 with the same appreciation, affection and generosity as before. In this connection Richard H. Kercheville, the testator's insurance agent and acquaintance before and after incorporation, testified in response to a question as to whether there was any change in the testator's attitude toward those persons listed in Group 2 after incorporation that:

"No, not that I recall. Everything was just the same. It appeared to me to be the same identical situation. They were still his employees, of which he referred to as his boys, and they were running the plant operations for him, and if there were any decisions of any size, they would come to him in order to make those."

As witness Moses expressed, those persons (in Group 2) remained at the testator's "beck and call" continuously through the rest of his life.

■ We are not to be understood as holding that the corporation was not bona fide. What we do hold is that the evidence supports the judgment of the court that the testator continued to consider that the same men who were working in the same business were still his employees and were still entitled to take under the will, just as they would have done before the corporation was formed. This holding is supported by the existence of the strong presumption against partial intestacy in case of a residuary clause. Kuehn v. Bremer, 132 S.W.2d 295 (Tex.Civ.App.1939, writ ref.). Also supporting the holding is the basic rule of construction that the words in a will must be given a meaning which will avoid intestacy if reasonably possible. 4 Page on Wills (1961 ed) sec. 30.14. Also significant here is the fact that the testator left his 1955 will unchanged, this fact being some evidence that he intended that all provisions of his will, including the gifts to his employees, would continue to be effective. In conclusion, we view appellants' position as a technical one which should not be permitted to defeat the obvious general intention of the testator. Hawes and Duncan v. Foote, supra.

■ Appellants did not plead estoppel. Consequently, it is not necessary to consider their estoppel point since Rule 94 of the Texas Rules of Civil Procedure specifically requires that estoppel be affirmatively pleaded.

Appellants' last point complains of the court's disallowance of attorney's fees. With respect to attorney's fees the court found there was insufficient evidence upon which to base a particular sum as a reasonable fee for each of the three attorneys representing appellants. None of the appellants testified as to what arrangements there may have been between them and their attorneys relative to fees. One of the attorneys for the appellants testified that in his opinion a reasonable compensation for services would be about thirty five hundred or four thousand dollars. There was no testimony of what the legal services were or how much time was spent.

■ Generally in this State, unless provided for by statute or contract, attorney's fees are not recoverable. Turner v. Turner, 385 S.W.2d 230 (Tex.1964). One exception to this rule is in those cases construing wills or trust instruments. However, even in the will or trust construction cases attorney's fees are not recoverable where the real controversy concerns, as here, which of the claimants is entitled to receive the assets of the estate. Van Hoose v. Moore, 441 S.W.2d 597 (Tex.Civ.App.1969, writ ref. n. r. e.).

The judgment of the trial court is affirmed.

Affirmed.