**Herbert KNEBEL et al., Appellants,**

**v.**

**The CAPITAL NATIONAL BANK OF AUSTIN, Appellee.**

**No. 12083.**

Court of Civil Appeals of Texas, Austin.

Feb. 6, 1974.

Rehearing Denied Feb. 27, 1974.

Byron Lockhart, Charles G. Trenckmann, Austin, for appellants.

James P. Hart, Hart & Keahey, Richard T. McCarroll, Clark, Thomas, Denius,

Winters & Shapiro, Louis Scott Wilkerson, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for appellee.

PHILLIPS, Chief Justice.

This is a companion case (actually part of the same case) handed down by this Court, this day, being No. 12,078, styled 7-Up Bottling Company of Austin, Inc., et al. v. The Capital National Bank, Independent Executor of the Estate of Edmund Perry Knebel, deceased, Tex.Civ.App., 505 S.W.2d 624. Our decision in No. 12,078 voided an option agreement between several of Mr. Knebel's heirs (and stockholders of the 7-Up Bottling Company of Austin, Inc.) and Knebel's estate to purchase the remainder of the 7-Up Bottling Company stock from the estate. Thus 50% of the 7-Up Bottling Company stock remains in the estate subject to distribution.

The suit at bar involves the claims for attorneys' fees of three attorneys representing several groups of heirs. These attorneys also contest the attorneys' fees awarded the Capital National Bank in its capacity as independent executor and ask for damages against the bank. The trial court denied recovery on any of these grounds and we affirm this judgment.

I.

Mr. Edmund Perry Knebel died September 5, 1965. In his will he appointed the bank and Mr. Henry H. Kuempel, independent co-executors, and both qualified as such. Over a year later in November, 1966, the bank filed this suit seeking a declaratory judgment as to the validity of the exercise by 7-Up Bottling Company of Austin, Inc. of an option to purchase decedent's stock. The Bottling Company sought to purchase the stock under an option agreement described in more detail in our opinion No. 12,078. The bank took the position that the option had been validly exercised for a consideration representing the "book value" of the stock as provided in the option agreement. In November of

1966, the 7-Up Bottling Company of Austin, Inc., joined by the stockholders in the company, filed an answer in which they also contended that the option had been validly exercised by the Bottling Company. In December, 1966, Henry H. Kuempel, as co-executor, intervened. Kuempel, in substance, adopted the position taken by the Capital National Bank, as well as the Bottling Company and the individual stockholders in their answer referred to above.

Some members of Knebel's family filed answers in which they attacked the validity of the exercise of the option by 7-Up Bottling Company and asked that the sale be set aside, and for other relief. Mr. Russell J. Horn and Mr. Byron Lockhart represent one group of heirs and Mr. Charles G. Trenckmann represents another group.[1] These attorneys are the appellants in this suit.

On the other hand, several of the heirs took the position that the exercise of the option by 7-Up Bottling Company was valid and should not be set aside, but, in the alternative, they asserted and expressly did not waive or relinquish their rights to share in all of the assets of the estate, if the sale should be set aside by the Court.

In October, 1967, defendants, Herbert Knebel, et al., filed a motion for partial summary judgment, which was opposed by 7-Up Bottling Company, Mr. Kuempel, and the stockholders who had joined in the earlier answer. After a pre-trial hearing held in November, 1967, the motion for partial summary judgment came on for hearing later in this same month. The order granting a partial summary judgment was entered in February, 1969. As part of the judgment, the court canceled, set aside, and declared to be null and void *ab initio* the transaction whereby 7-Up Bottling Company undertook to exercise the option to purchase stock of the estate of Knebel in the Bottling Company. This Court affirmed

this judgment in our opinion No. 12,078. This was also the judgment sought by the three attorneys who are parties to the lawsuit at bar.

The court also ordered a severance of the questions relating to the interpretation and construction of Knebel's will. For over two years following the partial summary judgment and severance, the activity in this litigation was in the severed cause on the question of the will·construction. The record in that severed cause appears in our opinion No. 11,841, entitled Burwell Knebel, et al. v. Capital National Bank in Austin, 469 S.W.2d 458 (Tex.Civ.App.1971, writ ref. n. r. e.).

After the severed suit was finally disposed of, Henry H. Kuempel resigned as independent co-executor in March of 1972. The bank then filed its second amended original petition in the original suit (this case) in May of 1972. Here the question of whether the "surviving stockholders" in the 7-Up Bottling Company were entitled to exercise the option to purchase the stock of the company belonging to the estate and associated questions were presented. It was here that the question of attorneys' fees for services rendered in this litigation was presented. The case came on for trial in January, 1973, and final judgment was entered in March, 1973. The judgment brought forward and made final the parts of the partial summary judgment invalidating the original exercise of the option by 7-Up Bottling Company, held that although Kuempel had resigned in March, 1973, he and the other "surviving stockholders" were not entitled to exercise the option to purchase the stock of the corporation belonging to the estate. The court awarded attorneys' fees to the bank for their services in this case and in the severed case, and denied all attorneys' fees to the attorneys (appellants) for the members of the family who had secured the partial summa-

1. As best we can ascertain from the record and brief before us, Horn and Lockhart represent Mrs. A. G. (Pearl) Saegert, Mrs. Emma Knebel, and Paul B. Knebel, Jr. Trenckmann represents Herbert Knebel, Mrs. Laura Marburger, Roland V. Knebel and Mrs. Emma Haberlein.

ry judgment (carried forward in and made a part of the final judgment) setting aside the sale under the exercise of the option by 7-Up Bottling Company. The court also dismissed, without prejudice, as premature, prayers of certain of the heirs to the effect that the bank should be directed to proceed with the distribution of the estate and that it should vote the estate's stock in favor of the liquidation of 7-Up Bottling Company.

## II.

Attorney-appellants' first contention, which we overrule, is that upon substantially uncontroverted facts, the court erred as a matter of law in denying them attorneys' fees.

■ In support of their contention, appellants rely on what is often referred to as the "common fund" doctrine. The basis of this doctrine[2] is the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including attorney fees. The keystone of this equitable doctrine is basic fairness to a successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses of litigation. This doctrine also seeks to prevent an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery. It also encourages the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. In support of this theory, appellants have cited numerous cases from many jurisdictions, both federal

and state.[3] These cases range from Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157, decided by the Supreme Court of the United States in 1881 to Brand v. Denson, 81 S.W.2d 111, writ dism'd, decided by this Court in 1935.

Long before the decision of the United States Supreme Court in Trustees v. Greenough, *supra,* the equitable concept of unjust enrichment was recognized by the common law courts as a basis for judicial imposition of a non-consensual obligation to pay money which obligated the common law courts, through the fiction of an "implied-in-law" promise, later called a "quasi-contract," enforced through the common law courts as *quantum meruit* and *quantum valebant* in the old *Indebitatus Assumpsit* action.[4]

■ True, the *nature* of the claim which the attorney-appellants make in this case is equitable and not contractual; but, whether such claim be asserted in a "legal proceeding" or an "equitable proceeding," the *merits* of such a claim are to be determined by the application of the same substantive rules of decision which determine the merits of any *quantum meruit* claim.

Texas never adopted the English common law forms of action (1 Tex.Jur.2d Actions § 542, n. 35) but did adopt the substantive common law of England, so far as not inconsistent with the constitution and laws of this state, to be the rule of decision in this state until altered or repealed by the legislature. When our courts today refer to a claim "on quantum meruit," reference is not being made to procedural rules but to the substantive rules of decision which govern disposition of the merits of a claim for "as much as he de-

2. In this regard see: Stauffer's Estate, 53 Cal.2d 124, 346 P.2d 748 (1959).

3. Other cases cited by appellants are: Thomas v. Honeybrook Mines, Inc., 428 F.2d 981 (3rd Cir. 1901), Powell v. Pa.R.R. Co., 267 F.2d 241 (3rd Cir. 1959), 7 C.J.S. Attorneys and Client § 193(2), p. 1098, et seq.; Restate-

ment of the Law, Restitution, sec. 105(2), anno.; 49 A.L.R. 1149, 79 A.L.R. 521, 107 A.L.R. 749.

4. Restatement, Restitution, Introductory Note 1, pp. 1–8; Ames, The History of Assumpsit, II—Implied Assent, 2 Harvard Law Rev. 53, Pound, Jurisprudence, Vol. V, pp. 251–252.

serves." Woodard v. Southwest States, Inc., 384 S.W.2d 674 (Tex.Sup.1964).

There is little doubt, from a review of the record before us, that appellant-attorneys labored long and diligently in behalf of their clients, and, when and if this case is finally laid to rest, it may be that the years of labor inured to the benefit of these clients; however, for the present, that is not for this Court to say. From the evidence before us, it is reasonable to find that these attorneys had *express oral and written contracts* with their various client-heirs which contract stated their fee to be "⅓ of the increase" over and above what such clients otherwise would receive as their portion of the estate. According to Mr. Horn: "The thought was raised that all of the beneficiaries would benefit from any action which would increase the assets, of the estate, and that what was good for Paul's mother and Mrs. Saegert would be equally good for the other heirs. Therefore, it seemed reasonable to try to get them together in an action. Later, events indicated that there was some diversity of opinion, and this united effort was abandoned."

Mr. Trenckmann testified: " . . . and I told them in connection with representing them, it would be necessary to assert this claim on behalf of the estate for recovery of the 7-Up stock, or alternatively, for fixing of a correct book value, and that I expected to be compensated for that out of the estate and that the maximum fee to them, though, would be one-third of the net recovered, that if I were compensated by the estate, that I would not also be compensated by them . . . My representation of my clients was not strictly limited to the recovery of the stock, but generally to representation of them with regard to their interest in the estate."

Since the trial below was to the court sitting without a jury and without a re-quest for findings of fact or conclusions of law, competent evidence supports an implied finding that these appellants' fees were fixed by contract. Consequently, it should be presumed here that the trial court resolved every disputed fact issue against appellants. North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795 (1949). The judgment of the trial court will be affirmed if it can be upheld on any legal theory which finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968).

■ *Woodard,* cited above, stated the rule applicable here to be: "Recovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract covering the subject matter, there can be no implied contract."[5] (citing cases) Or, as the court stated in Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 797 (1901): "If there was an express contract, there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other. Two things which cannot co-exist will not constitute one and the same thing." Musick v. Pogue, 330 S.W.2d 696 (Tex.Civ.App.1959, writ ref. n. r. e.).

■ The "common fund" cases urged upon us by appellants are not applicable here. None of these cases involves an express contract. Nor have we been cited to any case where the provisions of an express contract have been enforced with respect to one or more contracting-party beneficiaries to a common fund, while recovery against the remaining beneficiaries to the fund was allowed on the theory of implied contract. In fact, the rule in *Woodard,* applies not only as between the immediate parties to the express contract but also to so called third party beneficiary contracts. 66 Am.Jur.2d Restitution and Implied Contracts § 949, n. 64.

---

5. The use of the term "implied contracts" clearly embraces not only implied in fact contracts but also so called implied in law contracts. See McCall v. Superior Ct., 1 Cal. 2d 527, 36 P.2d 642, 95 A.L.R. 1019, 1022, 1023.

In view of the position we have taken with respect to appellants' first point, we need not discuss the questions relating to the benefits appellants might have conferred upon the estate.

### III.

Appellants' next point is the error of the court in awarding the bank attorneys' fees. In this connection, appellants maintain that under the evidence the court should have assessed damages against the executors individually equal to the amount of reasonable attorneys' fees awardable to the appellants, because such damages were proximately caused by the violations of the executor's statutory and fiduciary duties. We overrule these points.

■ Appellants contend that the bank as co-executor of Knebel's estate took a stand adversary to the best interest of the executors. In support of this assertion, appellants maintain that the book value that the bank accepted for the 7-Up stock pursuant to the stock purchase agreement was less than what they should have accepted, or what the book value of the stock actually was. This argument fails for several reasons; however, it is enough to point out that in order to recover in tort some fault, among other requirements, must be proved. The bank maintains, and with apparent justification, that it acted as it did solely to give effect to the intent of the testator. The bank admits that this position is and remains adversary to that of appellants. However, the record disclosed that several of the heirs accepted the bank's sale of the stock as, evidently, serving their best interests. To administer the estate and distribute the property to what the bank perceived to be the clear intent of the testator would have subjected the bank to litigation and, possibly, to liability; consequently, the bank followed the prudent course by filing a declaratory judgment action, seeking the direction of the trial court and specifically pleading that contentions and threats of a lawsuit by certain legatees prompted its action. It is a somewhat ironic twist that the heirs who have succeeded in nullifying the stock option agreement have thwarted the clear intent of the testator. The trial court, having awarded the bank its attorneys' fees (about half of what the bank sought), impliedly found no fault with its handling of the estate. The court did find that the bank has "just cause to petition this Court to declare the court's judgment as to those matters involved in this cause and also those matters which heretofore were severed from this cause and involved in cause No. 154, 596–A . . ." Under this record we are bound by this and any implied findings in support of the judgment.

### IV.

We, likewise, overrule appellants' point that the court erred in awarding the bank attorneys' fees in the will suit described above.

The question of whether the bank should recover attorneys' fees was in the dispute long before the order of severance of February 18, 1969. It was first raised by appellants themselves on March 9, 1967, in a prayer of their first amended original answer and cross-action of defendants Herbert Knebel, et al. Here appellants asked the court to declare the expenses of Kuempel and the bank in this suit not to be a lawful charge upon Knebel's estate. In its order dated February 18, 1969, the court granted the motion for summary judgment discussed in the companion case described above and severed the case as hereinbefore described.

After severance was had, the will case was subsequently appealed to this Court and as mentioned above, our opinion thereon is reported at 469 S.W.2d 458, writ ref. n. r. e. Appellants contend that the question of appellee's attorneys' fees, while not sought or discussed therein, were issues

connected with the cause of action or defense which, with the use of diligence, might have been tried in the severed cause as well as those which were actually tried citing Ogletree v. Crates, 363 S.W.2d 431 (Tex.Sup.1963).

■ After reviewing the record before us, we hold that the question of attorneys' fees for the bank in the will contest as well as those in the stock dispute were not severed from the original cause and that they therefore existed in the original cause and were subject to determination by the court. The appellants had already put this question before the court, and the court was aware of the contentions of all parties. The court then specifically severed only the issues pertaining to the interpretation and construction of Knebel's last will and testament. This left the question of attorneys' fees to be determined in the unsevered cause where further pleadings and litigation were had concerning this issue.

■ We hold, further, that the judgment rendered in the severed cause cannot be *res judicata* of the bank's cause in the unsevered cause, because a judgment for or against a person in either an individual or a representative capacity is not *res judicata* in a subsequent action brought by or against the same person in the other capacity. Thus the bank's participation in the severed cause in its capacity as executor can in no way be *res judicata* of the bank's claim for attorneys' fees in its individual capacity. See Baber v. Houston Nat. Exch. Bank, 218 S.W. 156 (Tex.Civ.App. 1919, writ ref.); Pryor v. Krause, 168 S. W. 498 (Tex.Civ.App.1914, writ ref.); 46 Am.Jur.2d Judgments § 525; Restatement, Judgments § 80(2).

The judgment of the trial court is affirmed.

Affirmed

SHANNON, J., not participating.