Reacus **GIBBS** and Wanda N. Gibbs, his wife, Appellants,

v.

Leroy J. **BLACKWELDER**, and Mary Louise Blackwelder, his wife, Appellees.

No. 9816.

United States Court of Appeals Fourth Circuit.

Argued Jan. 6, 1965.

Decided June 2, 1965.

Richard M. Millman, Washington, D. C., for appellants.

No appearance for the appellees.

Before HAYNSWORTH, Chief Judge, BOREMAN, Circuit Judge, and HUTCHESON, District Judge.

HAYNSWORTH, Chief Judge:

In litigation arising out of a land transaction in Florida, the plaintiffs, Gibbs, obtained a judgment in Florida against the defendant, Leroy J. Blackwelder, for a sum in excess of $35,000. Unable to collect the judgment in that State, they brought suit upon the Florida judgment in the United States District Court for the Eastern District of Virginia. There, the issue became the availability of certain lands, titled in the name of Mrs. Blackwelder, for the satisfaction of the husband's debts. The lands are said to be of very substantial value and the claim of the Gibbs one of several claims against the husband which will be collectible only if the lands standing in the name of the wife are available for their satisfaction.

Extended proceedings in the District Court resulted in a memorandum opinion and a decree in which the District Court held that Mr. Blackwelder did have an interest in the lands and that they were available for the satisfaction of his debts. There has been no appeal from that decree. In a supplemental memorandum opinion, however, the District Court refused to allow fees to the plaintiffs' attorneys, except certain minor sums in connection with their obtaining an order requiring the defendants to answer questions propounded in the taking of depositions, and it charged one of the plaintiffs' attorneys with $250 for having advised the plaintiffs to refuse to answer questions propounded to them. This appeal comes from the refusal to allow attorneys' fees to the plaintiffs in general and from the $250 charge against the attorney in favor of the defendants.

The District Court was under the impression that the request for the allowance of fees for the plaintiffs' attorneys was for the benefit of the attorneys and not for the benefit of the plaintiffs. He said in his memorandum opinion:

"The fees here claimed would not go to the plaintiffs. They are for the attorneys. The plainiffs have not asked that they be reimbursed for attorney fees incurred. In any event they would not be entitled to recover more than they had agreed to pay their attorneys and there is no evidence in this case what that amount is."

Now, at least, it is clear that the request for the allowance of fees is for the benefit of the plaintiffs. It is founded upon the principle that when one who, while establishing his own claim, also establishes the means by which others may collect their claims, a chancellor in equity may award counsel fees to the trail blazer out of the property made available for the satisfaction of all claims. The principle is applied so that the one who led in hewing the path to victory is not left saddled with extensive attorney's fees, which need not be incurred by his more timid fellows who held back until the fruits of the pioneer's success were laid before them. The principle is succinctly stated in Sprague v. Ticonic National Bank, 307 U.S. 161, 165–7, 59 S.Ct. 777, 779–780, 83 L.Ed. 1184.

"* * * To be sure, the usual case is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative. The present case presents a variant of the latter situation. In her main suit the petitioner neither avowed herself to be the representative of a class nor did she automatically establish a fund in which others could participate. But in view of the consequences of *stare decisis,* the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds.

"That the party in a situation like the present neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the chancellor's discretion * * *. Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation. As in much else that pertains to

equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility. * * *"

Here, Mrs. Blackwelder claimed the lands as hers and sought to show that certain funds which were used in their acquisition originated with her. In this proceeding the whole story has been brought to light and the District Court has held that the husband does have an equitable interest in the lands, and that they are available for the satisfaction of his debts. The plaintiffs say that there are other creditors of the husband who are now prepared to assert their claims, thus reaping for their own benefit the harvest the plaintiffs have cultivated through this litigation.

■ Under these circumstances, equity would seem to require careful consideration of whether or not the plaintiff's attorneys in this action should be allowed reasonable fees payable out of the defendants' land, or its proceeds, so that the plaintiffs alone will not have to bear the burden of the major attorneys' fees for services which have redounded to the benefit of all of Mr. Blackwelder's creditors. This may be done by fixing a reasonable value upon the services rendered by the attorneys to all claimants who are creditors of Mr. Blackwelder and who may now obtain with relative ease the satisfaction of their claims out of the lands. The fees thus allowed should be credited by the attorneys against the contractual obligation of the plaintiffs to pay fees to them, so that, to the extent of the plaintiffs' contractual obligations for attorneys' fees, any allowance of fees out of the proceeds of the land will redound to their benefit and to their relief from the disproportionate burden of at-

torneys' fees they otherwise would bear in comparison with other creditors of the husband.

Under these circumstances, we think it appropriate that the case be remanded to the District Court for further consideration of the claim for attorneys' fees in the light of the principle of Sprague v. Ticonic Bank, which, of course, has found expression elsewhere.[1]

It is apparent that the District Judge thought that the fees suggested by the attorneys as appropriate were unreasonable and excessive That may be, and, if he is of the same opinion after further inquiry and consideration in light of this declaration of his power to award attorneys' fees and their appropriateness, he may disregard their suggestion and allow fees in an amount which the Court is satisfied is reasonable.

■ It is also apparent that the District Judge thought that the plaintiffs' principal attorney, himself, had made the proceedings more complicated than necessary and he had other criticism of his conduct.[2] The Court was also caustic in its criticism of Blackwelder, whose outrageous conduct would have exhausted the patience of Job.

■ Such matters the District Court may appropriately take into consideration in fixing a reasonable value on the services rendered by the plaintiffs' attorney. Mr. Blackwelder's conduct, unquestionably, made the task of the attorneys more difficult and the performance of their duties more onerous. This would tend to warrant the allowance of fees in a larger amount than would otherwise be appropriate. On the other hand, if the plaintiffs' attorneys, themselves, made the litigation more complicated and costly than need have been,

1. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Bebchick v. Public Utilities Commission, D.C.Cir., 115 U.S.App. D.C. 216, 318 F.2d 187, 204; Washington Gas Light Co. v. Baker, D.C.Cir., 90 U.S.App.D.C. 98, 195 F.2d 29; Adams v. Kehlor Milling Co., E.D.Mo., 38 F. 281.

2. We do not understand the basis of the criticism of the attorney for dealing directly with the defendant, Leroy J. Blackwelder, who was undertaking to represent himself and who had no attorney with whom the attorney for the plaintiffs might deal. We discern no overreaching or any other basis for censure of the attorney here.

that, too, may be taken into account by a downward adjustment of the fees, which otherwise would have been allowable, in an amount approximating the costs unnecessarily imposed upon the other party. None of these things, however, is a reason for refusal to consider the allowance of any fees.

We think the District Court appropriately awarded small fees for the plaintiffs' costs in requiring the defendants to answer questions. However, we think the order which required the plaintiffs' attorney, Millman, to pay to the defendants $250, plus the cost of transcribing certain depositions, was inappropriate. Mr. Millman had advised the plaintiffs to refuse to answer certain questions on deposition which he thought improper. Under those circumstances, under Rule 37(a) of the Federal Rules of Civil Procedure, the defendants might have applied to the Court for an order requiring the plaintiffs to answer the questions propounded. In the event they had obtained such an order and the Court had required the plaintiffs to answer those questions which had not been answered, the Rule provides that the Court shall require the refusing party to pay the reasonable costs incurred in obtaining the order requiring the answers, together with reasonable attorneys' fees incurred in that connection.

Here, the defendants neither sought nor obtained an order requiring the plaintiffs to answer the questions they refused to answer upon the advice of Mr. Millman. They have incurred no costs and have paid no attorneys' fees for which they may be reimbursed under the provisions of Rule 37.

To the extent that the judgment below required the attorney, Millman, to pay certain fees and costs to the defendants, it is reversed. The judgment insofar as it disallows general attorneys' fees to the plaintiffs' attorneys is vacated and the case remanded for further proceedings not inconsistent with this opinion.

Reversed in part; vacated in part and remanded.