**7–UP BOTTLING COMPANY OF AUSTIN, INC., et al., Appellants,**

v.

**The CAPITAL NATIONAL BANK IN AUSTIN, Independent Executor of the Estate of Edmund Perry Knebel, Deceased, Appellees.**

**No. 12078.**

Court of Civil Appeals of Texas, Austin.

Feb. 6, 1974.

Rehearing Denied Feb. 27, 1974.

Louis Scott Wilkerson, Sneed, Vine, Wilkerson & Selman, Austin, for appellants.

James P. Hart, Hart & Keahey, Byron Lockhart, Charles G. Trenckmann, Austin, for appellees.

PHILLIPS, Chief Justice.

This suit was filed by the Capital National Bank of Austin in November of 1966 under the provisions of the Texas Uniform Declaratory Judgments Act. The suit was brought in the bank's capacity as an executor of the estate of Edmund Perry Knebel, deceased, to construe a stock option agreement and determine a fact question as to what was the "book value" of the decedent's stock in the 7-Up Bottling Company of Austin, Inc. The book value of this stock was a key question in determining the amount due the heirs of the estate inasmuch as the 7-Up Bottling Company had exercised an option to purchase the decedent's stock pursuant to a contract that it had entered into with the decedent prior to his death.

This contract or "option to purchase stock" allowed the corporation to purchase the stock of a deceased shareholder at the "book value" thereof as of the end of the month preceding the decedent's death and prescribed the manner of exercise and terms of payment.

Edmund Perry Knebel, one of the shareholders in the 7-Up Bottling Company died in 1965. The Capital National Bank in Austin and Henry Kuempel qualified as co-independent executors of his estate. Kuempel was also then an officer, director and stockholder in the 7-Up Bottling Company of Austin, Inc. This corporation then sought to exercise its option to buy Knebel's stock by delivering its written notice of intent to the bank. An officer of the bank's Trust Department sought to determine the "book value" of Knebel's stock as of the end of the month preceding his death, determined it to be $43,394.60, then sent a letter in December of 1965 to all of the beneficiaries of decedent's estate notifying them of the terms of the option agreement. The beneficiaries were further notified that the Corporation had exercised its option to purchase Knebel's twenty-five shares of stock, the amount that had been

determined to be the option price therefor, and how it was to be paid. Thereafter, the bank accepted a cash payment for one-fourth thereof and note for the balance from the 7-Up Bottling Company and delivered Knebel's stock to the Corporation.

Following the bank's action, there was dissatisfaction among some of the beneficiaries as to the price offered the estate for the stock. An independent audit was made and there were suggestions that the value of the stock was in excess of $300,000. The bank then filed this lawsuit in November, 1966, as stated above.

The legatees took divergent positions with respect to the Corporation's attempted purchase of the stock, however, a detailed description of these positions is not material to the decision of this case.[1]

Among the pleadings filed was a motion for "partial summary judgment," wherein the contention was made that the exercise of the option and sale was "void and of no force, and effect" because of Kuempel's dual relationship to the transaction. The trial court held a hearing on this motion in November, 1967, and rendered partial summary judgment declaring the transaction in question to be "null and void *ab initio*" and ordered restoration of the status quo. We affirm this judgment.

Appellants are before this Court on two points of error. The first being the error of the trial court in summarily declaring the option in this case to be null and void. Appellants contend that such law of this state as does make void (or voidable) a "self-dealing" sale by an executor of a decedent's estate does not reach or apply to the exercise of an option previously acquired by the optionee in its personal right for a valuable consideration in a pre-death

"deal" with the decedent option or during his lifetime. We overrule this point.

In order to put this case in the proper perspective, there was no summary judgment evidence before the trial court that the price offered by the Corporation was not the book value of decedent's stock as of the end of the month preceding his death. There was no summary judgment evidence before the trial court that there was any fraud, overreaching, or other inequitable conduct in the consummation of the transaction. Appellants contend that the trial court's explicit finding of the facts of Kuempel's dual relationship was the only reason the trial court ruled as it did in summary and final judgment, inasmuch as such dual relationship (irrespective of the equities pleaded and raised in the summary judgment evidence) voided the stock purchase agreement by virtue of Section 352 of the Texas Probate Code, V.A.T.S. It is our opinion that the trial court's evaluation was correct.

A synthesis of appellants' position is that whatever law giving a beneficiary a right to void a fiduciary's sale to himself (a so-called "self dealing" statute) is to prevent action inconsistent with fiduciary duty, to prevent the obtaining of a personal benefit by exercise of fiduciary power. Appellants contend that where an act is done pursuant to and in exercise of a *heretofore acquired* personal right and where what is done is not inconsistent with fiduciary duty, then such law is not applicable. Appellants argue that the "deal" was made in November, 1962, when Knebel (the deceased), for good and valuable consideration, granted to and then invested the optionee Corporation with a "right" to acquire his stock upon occurrence of the events therein specified by him.[2] Thereafter, when Knebel died in

---

1. The alignment of the parties and the corresponding positions they took are stated in more detail in a companion case handed down this day by this Court numbered 12,083, styled: Herbert Knebel et al. v. The Capital National Bank of Austin, Tex.Civ.App., 505 S.W.2d 628.

2. In this respect, appellants point out that according to a recent case, the term "book value" in a contract such as this "is unambiguous and is susceptible of only one construction. It is the value shown by the books of the business and no other value. It means the value that is arrived at by taking the total value of the assets as shown by its

September, 1965, his stock passed "encumbered" by such right which he theretofore had granted. Thereafter the optionee was simply, unilaterally, without discretion on the part of the bank, exercising its personal right. That when optionee delivered the purchase price to the bank in the amount prescribed by the 1962 agreement, the optionee's right thereupon "ripened" into a title right—still without any reciprocating act upon the part of the bank.

Appellants' argument is persuasive and, perhaps, points the way to a more equitable and practical result. However, we must reject it. Section 352 of the Texas Probate Code proscribes any other course. This section is as follows:

"The personal representative of an estate shall not become the purchaser, directly or indirectly, of any property of the estate sold by him, or by any co-representative if one be acting. If any such purchase is made, any person interested in the estate may file a written complaint with the court in which the proceedings are pending, and upon service of citation upon the representative, after hearing and proof, such sale shall be by the court declared void, and shall be set aside by the court and the property ordered to be reconveyed to the estate. All costs of the sale, protest, and suit, if found necessary, shall be adjudged against the representative. Acts 1955, 54th Leg., p. 88, ch. 55."

■ Kuempel as co-executor with the bank is a personal representative of the estate. He is also the principal stockholder of the Corporation and is purchasing "directly or indirectly" property of the estate sold by him. It is not correct, as appellants assert, that the "deal" was consummated in 1962. There could have been none then, because no one then knew, or could have known, who would be the first shareholder to die. Then too, there could have been no delivery of the stock until

after the death of a shareholder. Consequently, there was only an offer made in 1962, the acceptance thereof and the attempted conveyance of title having been made in 1965 by the estate of which Kuempel was an integral part. Thus, under the declaration of the statute the written complaint filed by the legatees with the corresponding service, hearing and proof, voided the transaction. The statute is clear and unambiguous and does not provide for any exceptions from its terms. See Mitchell v. Thompson, 292 S.W. 862 (Com.App.1927); Wall v. Wall, 172 S.W.2d 181 (Tex.Civ.App.1943, writ ref.); Rayburn v. Harrison, 269 S.W.2d 487 (Tex.Civ.App.1954).

■ Appellants' second point of error, which we overrule, is the trial court's declaration and conclusion "as a matter of law" that the other stockholders "cannot" now exercise the option provided for in sub-paragraph (b) of paragraph II of the option agreement and is an advisory opinion which the trial court had no jurisdiction to render and should be vacated by this Court.

The court in its final judgment made final that part of the order granting the partial summary judgment which canceled, rescinded, and declared void *ab initio* the attempt to, by the 7-Up Bottling Company of Austin, Inc., and then further held, ". . . as a matter of law that, even though Henry H. Kuempel resigned on March 12, 1972, as one of the coindependent executors of the estate of Edmund Perry Knebel, Deceased, the 'other stockholders' . . . (naming them) referred to in sub-paragraph (b) of paragraph II of the 'Option To Purchase Stock' . . . cannot now exercise the option provided for in such sub-paragraph."

There was a very real and urgent question to be decided before the estate could be liquidated and distributed properly. See Firemen's Insurance Company of Newark, New Jersey v. Burch, 442 S.W.2d 331

---

books and deducting therefrom the total liabilities." Chaffe v. Murray, 492 S.W.2d 680 (Tex.Civ.App. Corpus Christi 1973, writ applied for, No. B–4017, May 16, 1973). As to

the validity *vel non* of such type contract, see Ling and Company v. Trinity Savings and Loan Assn., 482 S.W.2d 841 at 844 (Tex.Sup. 1972).

(Tex.1968), and Central Surety & Insurance Corp. v. Anderson, 445 S.W.2d 514 (Tex.1969), where the Supreme Court held that the trial court had properly declared that under its contract the insurance company had a duty to defend the insured. The situation before us is not like the second question decided in that case, of a hypothetical liability under a judgment which might or might not thereafter be entered.

The present case also comes within the proper provisions of Section 2 of Article 2524–1, providing that any person interested under a written contract may have determined any question of construction under the instrument and "obtain a declaration of rights, status, or other legal relations thereunder." There was a real controversy as to the construction of the option purchase contract, in which interested parties were adopting opposite positions, and which had to be decided in order that a proper distribution and liquidation of the decedent's estate could be effected. This was a justiciable question which the district court properly decided.

The judgment of the trial court is affirmed.

Affirmed.

SHANNON, J., not participating.