**Herbert KNEBEL et al., Petitioners,**

**v.**

**The CAPITAL NATIONAL BANK IN AUSTIN et al., Respondents.**

**No. B–4546.**

Supreme Court of Texas.

Dec. 11, 1974.

On Denial of Rehearing March 5, 1975.

Charles G. Trenckmann, Russell J. Horn, Byron Lockhart, Austin, for petitioners.

Sneed, Vine, Wilkerson & Selman, Louis Scott Wilkerson, Clark, Thomas, Harris, Denius & Winters, Richard T. McCarroll, Hart, Keahey and Hart, James P. Hart, Austin, for respondents.

STEAKLEY, Justice.

This is another stage in proceedings adjudicated in part in 7–Up Bottling Company of Austin, Inc. v. Capital National Bank in Austin, Independent Executor of The Estate of Edmund Perry Knebel, Deceased, 505 S.W.2d 624 (Tex.Civ.App.1974, writ ref'd, n. r. e.). The problems here involve claims for attorneys' fees. The current opinion from which this appeal is taken is reported as Herbert Knebel, et al. v. Capital National Bank of Austin, 505 S. W.2d 628.

A narration of the facts and circumstances reviewed in detail in the two opinions of the Court of Civil Appeals will pose the matters now at hand.

Edmund Perry Knebel died September 5, 1965. At that time he was a fifty per cent stockholder in the 7–Up Bottling Company of Austin, Inc. The other fifty per cent of the stock was held by Henry H. Kuempel, et al., who are Respondents here. Prior to incorporation Knebel had done business as a sole proprietor. In November 1962 he entered into a contract with the corporation by the terms of which the corporation was given an option to purchase the stock of a deceased stockholder at its book value. Knebel's will executed under date of November 1, 1955 named the Capital National Bank in Austin and Henry H. Kuempel as Independent Co-executors. The residuary clause of the will created a testamentary trust upon the termination of which forty-eight per cent of his residuary estate is to be divided among eight named relatives and the remaining fifty-two per cent is to be divided among ten other named persons indicated as being Knebel's general manager and employees. The trust was upheld in Knebel v. Capital National Bank in Austin, 469 S.W.2d 458 (Tex.Civ.App.1971, writ ref'd, n. r. e.).

In time after Knebel's death the corporation sought to acquire Knebel's stock by exercise of the option provided in the 1962 contract mentioned above. The Bank as an Independent Co-executor of Knebel's estate determined the book value of the stock to be $43,394.60 and notified the devisee-beneficiaries that the stock would be sold to the corporation for the option price thus determined. Thereafter the Bank accepted a cash payment of one-fourth of the purchase price and a note for the balance and delivered the Knebel stock to the corporation.

In the meanwhile, several of the devisee-beneficiaries expressed dissatisfaction with the price paid for the stock and in November 1966 the Bank filed suit for construction of the option agreement and for a determination of the book value of Knebel's stock in the corporation. Herbert Knebel, et al., the Petitioners here, a group of the devisee-beneficiaries who were defendants in the suit filed by the Bank, filed a motion for partial summary judgment grounded on the contention that the exercise of the option and subsequent sale was void because of the dual relationship of Henry H. Kuempel, i. e., as an officer, director and stockholder in the corporation and as an Independent Co-executor of Knebel's estate. The trial court in February 1969 rendered partial summary judgment declaring the transaction to be null and void *ab initio* and ordered restoration of the status quo. This is the judgment that was affirmed in 7–Up Bottling Company, Inc., et al. v. Capital National Bank in Austin, *supra*.

In March 1972, Henry H. Kuempel resigned as Independent Co-executor of the estate of Knebel and in May 1972 the Bank filed an amended petition in the original suit for determination of the question, among others, of whether the option to purchase the stock belonging to the Knebel

estate could then be exercised. Herbert Knebel, et al., by way of a cross-action, sought an award of attorneys' fees from the Knebel estate, and from the executors, as later noticed in more detail.

After trial to the court in January 1973, a final judgment was "signed and filed" under date of March 20, 1973. This is the judgment which is the subject of the stage of the proceeding now at hand and which, as stated, was affirmed by the Court of Civil Appeals.

The judgment made final the previous partial summary judgment, the effect of which has been stated above, and decreed that the stockholders in question were not then entitled to exercise the option to purchase the stock belonging to the Knebel estate. The judgment recited that the Bank in its capacity as Independent Executor of the estate had just cause to petition the court for the declaratory relief sought and the sums of $4,176.00 and $3,586.00 were awarded to the attorneys for the Bank for their services rendered in the various stages of the proceeding, the payment of which was directed to be out of the assets of the estate of Edmund Perry Knebel, deceased, and as an expense of administration.

With respect to the cross-action of Herbert Knebel, et al., it was further decreed in the judgment that attorneys' fees should not be awarded or adjudged to be paid out of the assets of the estate of Knebel or from the executors.[1] Findings of fact and conclusions of law were not filed by the trial court and there was no request therefor by any party.

Separate applications for writ of error were filed in the names of those individuals represented by different attorneys who comprise the group of devisee-benefi-

ciaries we have identified as Herbert Knebel, et al. However, they make common cause in points of error respectively attacking the judgment of the trial court as affirmed by the Court of Civil Appeals that (a) denied them a recovery of attorneys' fees from the Knebel estate; (b) denied a recovery of such fees against the executors for the benefit of the Knebel estate as a surcharge for damages caused the estate by their actions; (c) awarded attorneys' fees to the Bank to be paid by the Knebel estate.

Writ of error was granted on the points asserting error in the denial of the claim for attorneys' fees from the Knebel estate, (a), above. The Court of Civil Appeals tacitly overruled the points as to (b) but did not write; we will consider this later. As to (c), we are in agreement with the writing of the Court of Civil Appeals affirming the award of attorneys' fees to the Bank to be paid by the Knebel estate and will pretermit discussion of this.

Our views with respect to the claims of Herbert Knebel, et al., for attorneys' fees from the Knebel estate differ from those of the Court of Civil Appeals and the writing that immediately follows will consider this problem; and for the reasons to be stated, we will reverse the judgment of the Court of Civil Appeals and remand the cause to that court.

Based on their successful litigation in nullifying the stock redemption sale and the claimed benefit to the estate and its beneficiaries therefrom, Herbert Knebel, et al., invoked the rule of the "common fund" doctrine. They sought reimbursement from the Knebel estate for the fees they are contractually bound to pay their attorneys under their contingent fee contracts, and an additional recovery for the use and benefit of their attorneys.

---

1. The judgment contained other provisions that are not under attack in this appeal; it recited that further relief sought by the parties was premature and would not be adjudicated, i. e., that there should be an accounting, and the filing of a further inventory to include the assets of the 7-Up Bottling Company, Inc., with the Bank directed to proceed with distribution of the estate; and that the Bank should be directed to assert the contract right provided in the stock option contract to have the corporation liquidated.

The rule thus invoked rests in equity and not in contract in charging a common fund with expenses, including attorneys' fees. The equitable objective is that of distributing the burden of such expenses among those who share in an accomplished benefit. The rule has been recognized with approval in Texas and elsewhere, particularly in federal jurisdictions. The court wrote in Brand v. Denson, 81 S.W.2d 111 (Tex.Civ.App.1935, writ dism'd):

> . . . In the language of the authorities, a court of equity will allow reasonable attorney's fees to a complainant who at his own expense has maintained a successful suit or proceeding for the preservation, protection, or increase of a common fund. . . . The rule is founded upon the principle that one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses, including a reasonable attorney's fee; and that the most equitable way of securing such contribution is to make such expenses a charge on the fund so protected or recovered.

The court cited the Annotation in 49 A.L.R. 1149, 1170, 1171; this Annotation, which has been supplemented in 107 A.L.R. 749, states the rule as follows:

> The rule is that a court of equity, or a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him. [49 A.L.R. 1150]

See Mitchell v. Mitchell, 151 Tex. 1, 244 S.W.2d 803 (1951); Thornhill v. Elskes, 412 S.W.2d 73 (Tex.Civ.App.1967, no writ); Adler v. Brooks, 375 S.W.2d 544 (Tex.Civ.App.1964, writ ref'd n. r. e.); Modern Optics, Inc. v. Buck, 336 S.W.2d 857 (Tex.Civ.App.1960, writ ref'd n. r. e.); American National Bank of Beaumont v. Biggs, 274 S.W.2d 209 (Tex.Civ.App.1954, writ ref'd n. r. e.); Brand v. Denson, 81 S.W.2d 111 (Tex.Civ.App.1935, writ dism'd); Thurber Construction Co. v. Kemplin, 81 S.W.2d 103 (Tex.Civ.App.1935, writ dism'd); Texon Oil & Land Co. of Delaware v. Hanszen, 292 S.W. 563 (Tex. Civ.App.1927, no writ); Byrne v. First National Bank of Lake Charles, 20 Tex.Civ. App. 194, 49 S.W. 706 (1899, writ ref'd). Also cf. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Central Railroad & Banking Co. v. Pettus, 113 U. S. 116, 58 S.Ct. 387, 28 L.Ed. 915 (1884); Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881); Gibbs v. Blackwelder, 346 F.2d 943 (4th Cir. 1965); Schechtman v. Wolfson, 244 F.2d 537 (2d Cir. 1957); Wallace v. Fiske, 80 F.2d 897 (8th Cir. 1936); Palmer v. Hartford National Bank & Trust Co., 160 Conn. 415, 279 A.2d 726 (1971); In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958); Bosch v. Meeker Cooperative Light & Power Association, 257 Minn. 362, 101 N.W.2d 423 (1960); Jesser v. Mayfair Hotel, Inc., 360 S.W.2d 652 (Mo.1962); Annot., 107 A.L.R. 726 (1937).

It was recognized in Hall v. Cole, *supra:*

> Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," Sprague v. Ticonic National

Bank, 307 U.S. 161, 166, [59 S.Ct. 777, 780, 83 L.Ed. 1184] (1939), and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391–392, [90 S.Ct. 616, 625, 24 L.Ed. 593] (1970); see Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 [87 S.Ct. 1404, 1407, 18 L.Ed.2d 475] (1967).

. . . . . .

Another established exception involves cases in which the plaintiff's successful litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." Mills v. Electric Auto-Lite, supra, [396 U.S.] at 393–394 [90 S.Ct. at 626]. "Fee shifting" is justified in these cases, not because of any "bad faith" of the defendant but, rather, because "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense."

■ We are generally in accord with the explications of the rule by these authorities and disagree with the conclusion of the Court of Civil Appeals that Woodard v. Southwest States, Inc., 384 S.W.2d 674 (Tex.1964), precludes its application here. *Woodard* involved a controversy between parties to an express contract. It was held that an implied contract supportive of a claim in *quantum meruit* could not arise out of acts of performance of the express contract. Here, the attorneys are not seeking to recover their fees in *quantum meruit* from their original clients; the recovery suit is by their clients against beneficiaries of the fund who were not, of course, parties to the contract of employment of the attorneys. The fact that the fees in question, if allowable, would be fixed on a *quantum meruit* basis does not bring the problem within the ambit of *Woodard,* and the cases there cited.

■ But there are other problems here. Foremost is the implied finding of the trial court, acknowledged by Petitioners, that nullification of the attempted exercise of the stock purchase option, and hence the services of the attorneys who brought it about did not enrich or benefit the Knebel estate to an extent requisite to invocation of the rule under review. Petitioners acknowledge that there must be a benefit to the Knebel estate for fees to be allowed against it under the common fund rule. But as to this, their position is threefold. They say that the benefit need not be monetary or pecuniary but that the successful assertion of any substantial commonly held right is sufficient. If not, they further say that the evidence conclusively establishes substantial monetary benefit to the Knebel estate as result of the nullification of the stock redemption sale. And, finally, they say that in any event the implied finding of no benefit to the estate by the trial court is against the great weight and preponderance of the evidence and our practice and duty requires a remand to the Court of Civil Appeals for consideration of these points. See Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30 (1958) and 159 Tex. 576, 325 S.W.2d 124 (1959). It is to be noted in this connection that Petitioners as appellants in the Court of Civil Appeals asserted by point of error in their original brief that the denial of attorneys' fees was contrary to the overwhelming weight and preponderance of the evidence. In an amended brief it was asserted by more specific points of error that the greater weight and preponderance of the evidence establishes that the nullification of the stock redemption sale and the resulting recovery of the stock was of benefit to the Knebel estate. That court stated in its opinion, however, that in view of its rulings otherwise, which we hold to be in error, it need not discuss the questions relating to the benefits that might have been conferred upon the estate.

Respondents, on the other hand, assert that the record is conclusive to the contrary, i. e., that the loss to the estate of the proceeds from the sale of the Knebel stock to the corporation and the return of the stock to the estate will prove to be detrimental; or, at the least, that the evidence supports the implied finding of the trial court.

The nature of the benefit to non-participating members of a class that will be required for purposes of the common fund rule is inconclusive under the decisions. The federal courts speak of "substantial benefit" although not always in terms of pecuniary benefit: a benefit to others through *stare decisis,* Sprague v. Ticonic National Bank, *supra*; the importance of fair and informed corporate suffrage, Mills v. Electric Auto-Lite, *supra*; the preservation of union democracy, Hall v. Cole, *supra.* The Supreme Court of Minnesota in Bosch v. Meeker Cooperative Light & Power Association, *supra,* has written that "a substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." The Supreme Court of Missouri in Jesser v. Mayfair Hotel, Inc., *supra,* has given particular emphasis to a showing of pecuniary gain, saying:

. . . It is sufficient for the purpose of this case that the evidence tends to show that the corporate shares had a value substantially in excess of either offer which excess would have been lost to the trust estate and ultimately to some or all of the certificate holders if the proposed sale had gone unchallenged. It follows that the construction of the trust agreement and the prevention of the unauthorized sale was a substantial benefit to the Mayfair corporation and to the beneficiaries of the trust.

Even more to the point, the Supreme Court of Connecticut in Palmer v. Hartford National Bank & Trust Co., *supra,* in affirming an award of attorneys fees, stated:

. . . We further point out that in order to recover in an equitable action the plaintiff has the burden of proving that his actions created an actual benefit to the fund or estate. Thus, a mere claim is insufficient. There must be a benefit, and a large enough benefit to have made the expenses incurred worthwhile. The benefit must appear, overall, looking backward from the fait accompli.

In the case at hand, monetary considerations are paramount between the litigating parties. The essential basis of this suit for attorneys' fees is the claimed pecuniary benefit to the non-participating devisee-beneficiaries resulting from the successful litigation. In our view, a pecuniary benefit to the class is required before there can be an award of attorney's fees. As recognized by the Court in Schechtman v. Wolfson, *supra,* in speaking of derivative actions, there should be some check lest they be purely strike suits of great nuisance and no affirmative good. Lawyer's rights based on a contingent fee contract are wholly derivative from those of his client. Dow Chemical Co. v. Benton, 163 Tex. 477, 357 S.W.2d 565 (1962). Moreover, there must be a guard against the ever-present possibility of officiousness. See Hope, Officiousness, 15 Cornell Quarterly 25 (1929). It is further noteworthy that the nullification of the stock redemption sale rested on the prohibition in Section 352 of the Texas Probate Code, V.A.T.S., quoted infra, against the purchase of any property of an estate by a personal representative; as to this, it is recited in the opinion of the Court of Civil Appeals upholding the voidance of the sale because of Kuempel's dual relationship to the transaction, that there was no summary judgment evidence of fraud, overreaching or other inequitable conduct in the consummation of the transaction. See 7–Up Bottling Company of Austin v. Capital National Bank of Austin, *supra,* 505 S.W.2d at page 626.

Finally, it is to be emphasized that the measure of a recovery of attorney's fees is necessarily determinable in the light of the nature and extent of the benefit accruing to the non-participating members of the class; and that parties purporting to have brought about a pecuniary benefit should bear the burden of establishing both its value and the resulting enrichment that calls for an equitable award in their behalf. See Trustees v. Greenough, *supra*.

Turning to the problem of benefit here, it is agreed that the Knebel estate will be required to pay approximately $60,000 (the redemption price of $43,349.-60, plus interest) to the corporation for return of the Knebel stock as a result of the stock option nullification. Whether the Knebel estate ultimately gains or loses from this will depend upon the net return to the estate in the subsequent disposition of its fifty per cent interest in 7–Up Bottling Company, Inc., whatever form this may take. It may be that the litigant-stockholders, the Petitioners and Respondents, and the executors of the Knebel estate, can at this late date agree to pool the outstanding stock and sell the corporate business as a going concern, and that a purchaser can be found. Or, it may be that the corporation will be liquidated and the assets distributed to the stockholders, either by agreement of the owners of the stock or by a liquidation ordered by the court at their instance. Or, it may be that the fifty per cent stock interest held by the Knebel estate will be independently sold, an unlikely event since such a sale would not afford the purchaser a controlling interest in the corporation.

Which of these contingencies will happen, or which is more likely to happen, and when, and the resulting return to the estate at such time, is not conclusively established by the record. The fair market value evidence presented by Petitioners related only to the first contingency, i. e., the sale of the bottling business of the corporation as a going concern to be accomplished by a sale of the corporate stock. The chief witness as to this, Walton Sherman, in testifying to fair market value of the business, spoke of factors such as potential growth, an increase in sales, the plant capacity, a sale of the business as a complete package. His fair market value estimates presupposed a sale of the stock of the corporation and, in effect, sought to translate the assets of the corporation into the outstanding stock at a figure commensurate with the estimated going business purchase price.

But this is not the whole story. As we have noted, 7-Up Bottling Company, Inc. is a closely held corporation with the Knebel estate and the Respondents owning respective fifty per cent interests. Neither can force the other to sell and neither has a controlling interest to sell. They have been disputants in litigation for many years. As to the possible independent sale of the Knebel estate stock, the witness Sherman acknowledged the difficulty in selling fifty per cent of the stock of a going business; he testified, ". . . who's going to put money into something and own only fifty per cent of it? They want it all . . . ." He did not purport to place a fair market value upon the Knebel stock as such. Nor is there evidence of the liquidation value of the assets of the corporation whether by agreement or by order of the court. This is pointed out in the brief of Mrs. A. G. Saegert, et al., appellants in the Court of Civil Appeals and Petitioners here, where it is stated that the testimony of the witness Louis Garrett concerning the fair market value of the land owned by the corporation was the only testimony of the liquidation value of the assets of the corporation. It is also fair to say that the market value testimony of the witness Henry H. Kuempel was likewise predicated upon a sale of the corporation as a going business and was to the same general effect as the witness Sherman.

So it is not conclusively shown which of the possible contingencies will surely occur; or that when one or the other does occur, the net return to the Knebel estate

will be greater or less than the return to the estate in the prior stock redemption transaction subsequently nullified at the instance of the Petitioner devisee-beneficiaries. It may well be that the prediction of Petitioners in their post-submission brief will be confirmed, i. e., that in the event of a remand to the trial court the parties at such time will have agreed to a sale of the corporation as a going concern; that the ultimate result of the nullification of the stock redemption sale will then be accurately known; and that an award of attorneys' fees appropriate to the final facts can then be made by the trial court. But for the reasons we have stated, this is speculative at the most under the record now before us.

■ What we have written is not intended to prejudge the fact determination responsibility of the Court of Civil Appeals in the remand to be ordered; it is to emphasize that there are evidentiary factors favorable to both Petitioners and Respondents that preclude a no evidence ruling as respectively urged. The rule for testing "no evidence" problems is not the same as that applicable to "overwhelming preponderance" situations. Perry National Bank v. Eidson, 161 Tex. 340, 340 S.W.2d 483 (1960).

As noted in the forepart of this opinion, Petitioners also claim attorneys' fees against the executors of the Knebel estate as a surcharge for damages caused the estate by their actions in the subsequently nullified stock redemption sale. This claim is predicated principally upon Section 352 of the Probate Code, which provides:

§ 352. Representative Not to Purchase Property of the Estate

The personal representative of an estate shall not become the purchaser, directly or indirectly, of any property of the estate sold by him, or by any corepresentative if one be acting. If any such purchase is made, any person interested in the estate may file a written com-

plaint with the court in which the proceedings are pending, and upon service of citation upon the representative, after hearing and proof, such sale shall be by the court declared void, and shall be set aside by the court and the property ordered to be reconveyed to the estate. *All costs of the sale, protest, and suit, if found necessary, shall be adjudged against the representative.* Acts 1955, 54th Leg., p. 88, ch. 55.

The emphasized sentence in the predecessor statute did not include the word "protest" and the argument is that this addition, i. e., "all costs of the . . . protest . . . , if found necessary, shall be adjudged against the representative", constitutes a legislative provision for the recovery by them of the attorneys' fees they are obligated to pay. Petitioners say that the portion of their total services attributable to non-client devisees is a "costs of protest" and that the Legislature contemplated reasonable attorneys' fees for all services in rescinding the sale as a major item of costs of protest. Apart from this, Petitioners also categorize their claim for attorneys' fees as damages which they are entitled to recover from the executors; and that the executors should be held liable for reasonable attorneys' fees on the entire recovery, i. e., the nullification of the stock redemption sale, and not limited to the proportionate share of the Petitioner devisees who contracted for the attorneys and instituted the action.

■ Whatever the phrase "costs of the protest" in Section 352 may include, it cannot be said to constitute an express legislative provision for the assessment of attorneys' fees in the proceedings under review here; the most that can be said is that it may be held to do so by implication. But an allowance of attorneys' fees in the absence of explicit legislative provision, whether under Section 352, or as damages against the executors, would run counter to the rule repeatedly reaffirmed by this Court that attorneys' fees are not recover-

able either in an action in tort or a suit upon a contract unless expressly provided by statute or by contract between the parties. See New Amsterdam Casualty Co. v. Texas Industries, Inc., 414 S.W.2d 914 (Tex.1967), and the cases there cited. In response to the forceful argument that the statute there in question, Art. 2226, Vernon's Ann.Civ.St., should be extended by implication to effect a legislative purpose in a related statute, we ruled that the necessary statutory basis for an award of attorney's fees may not be supplied by implication but can be found only in express terms of the statute in question. Statutory provisions for the recovery of attorney's fees are in derogation of the common law, are penal in nature and must be strictly construed. Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.1962). Cf. Ojeda v. Hackney, 452 F.2d 947 (5th Cir. 1972).

To summarize, we hold:

(1) It is not shown as a matter of law either that the successful litigation sponsored by Herbert Knebel, et al will substantially benefit the Knebel estate and its other beneficiaries, or will be detrimental to the estate and to them;

(2) Since the Court of Civil Appeals did not consider the question of benefit to the estate, and hence did not determine whether the implied finding of the trial court in the negative is against the great weight and preponderance of the evidence, the cause will be remanded to the Court of Civil Appeals for determination of this question;

(3) If the Court of Civil Appeals determines that the implied finding is sufficiently supported by the evidence, it will affirm the judgment of the trial court;

(4) If the Court of Civil Appeals determines that the implied finding is against the great weight and preponderance of the evidence, it will reverse the judgment of the trial court and remand the cause. In such event the trial court in the exercise of its equitable powers may in its discre-

tion order an allowance of attorneys' fees to Herbert Knebel, et al, to be paid by the Knebel estate in such sums and manner of payment as required in the interests of justice and in the light of the substantiality of benefit to the Knebel estate;

(5) The denial of the claim of Petitioners for an award of attorney's fees against the executors of the Knebel estate is affirmed.

It is so ordered.

GREENHILL, C. J., not sitting.

ON REHEARING

POPE, Justice (dissenting in part).

I respectfully dissent in part. I concur in the court's holdings except that I disagree with its judgment remanding this cause to the court of civil appeals. We have ruled that the Knebel estate may be held liable for attorney fees upon proof that the estate benefited from the labors of the attorneys for the devisees under the will of Edmund Knebel. The court, however, remands the cause to the court of civil appeals so that court can review what is thought to be an implied finding of the trial court that the estate was not benefited.

The proof of benefit to the estate is undisputed. The devisees through their attorneys successfully challenged and nullified the original stock sale and recovered the stock for the benefit of the estate. This means that the estate must pay back the $43,349.60, plus interest, for the return of the Knebel stock. This amounts to approximately $60,000. The majority opinion expresses concern whether the stock in the estate will now be worth that much when a proper sale is made. All of the evidence shows value greatly in excess of $60,000.

We ought to dispose of this case upon the basis of the proof presented upon the trial of the case. Two witnesses testified about the value of the business. Their testimony is unchallenged. Walton Sherman, a quali-

fied broker of soft drink industries and properties, said that the "cash in fist" value of the whole business was $657,-000.00. He named five prospective purchasers who lived out of Austin and said there were two or three in Austin. Plaintiffs called Henry Kuempel, their adversary, to testify. Without repeating all of his testimony, he was asked whether he held to the view that the business was worth about $600,000. His answer was, "Yeah, I think that's a figure that's within reason." No witnesses were called to question this evidence. The proof came from both sides of the contest, and both witnesses substantially agreed on the value. In fact, Mr. Kuempel testified during the course of the trial, that the net worth of the corporation was $730,000.00. It would have been to Mr. Kuempel's interest to testify to a low value.

The majority opinion mentions several supposed courses of action which the executors might take in effecting a sale, and concludes that a sale of half the stock may not bring as much as a sale of all of it. It says that neither owner can force the other to sell.

The Knebel devisees have already set aside one sale because the executors sold it for too little. Surely this court is not now holding that the executors can make another sale for less than the amount the stock or the business will bring on the market. A sale is not dependent upon the consent of the stockholders. In fact, the majority opinion notes that the trial court judgment directs the executor "to assert the contract right provided in the stock option contract to have the corporation liquidated." If the business will bring more by a sale of the business as a whole, it should be so sold.

The undisputed proof, therefore, is that the estate was substantially benefited. The case has on two prior occasions been through the total appellate process to reach this court. It should now be remanded directly to the trial court for a final disposition and for determination of the reasonable attorney fees.