Affirmed in Part and Reversed and Remanded in Part and Memorandum
Majority and Concurring Opinions filed October 2, 2007








 

Affirmed in Part and Reversed and Remanded in Part and
Memorandum Majority and Concurring Opinions filed October 2, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00921-CV

____________

 

ANGLO-DUTCH PETROLEUM
INTERNATIONAL, INC. AND

 ANGLO-DUTCH (TENGE) LLC, Appellants

 

V.

 

LITTLEMILL LIMITED, Appellee

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 2004-60996

 



 

M E M O R A N D U M   M A J O R I T Y   O P I N I O N








Appellee,
Littlemill Limited, filed suit against appellants, Anglo-Dutch Petroleum
International, Inc. and Anglo-Dutch (Tenge) LLC, for breach of contract and
other causes of action.  The trial court granted appellee=s motion for partial summary judgment
holding that the contracts were valid and enforceable.  The trial court then
granted appellee=s motion for summary judgment on appellee=s contract damages and attorneys= fees.  In two issues, appellants
contend that: (1) the trial court erred in concluding the contracts at issue
were valid and enforceable and that appellants had breached the contracts as a
matter of law; and (2) the trial court erred in awarding appellee its attorneys= fees.  We affirm in part and reverse
and remand in part.

Factual and Procedural Background 

For
reasons not relevant to this appeal, appellants filed suit against Halliburton
Energy Services, Inc. (AHalliburton@) and Ramco Oil and Gas, Ltd. (ARamco@).  Appellants sought damages in the
amount of $677 million in their lawsuit against Halliburton and Ramco.  Faced
with the expense of maintaining the lawsuit, as well as operating their
business, and unable to obtain bank loans due to a lack of collateral,
appellants sought to raise money by soliciting investors in its litigation with
Halliburton and Ramco.  Appellants entered into Claims Investment Agreements in
which investors agreed to fund the litigation and office expenses of appellants
in return for a portion of the cash recovery, if any, from Halliburton and
Ramco.  The investors were divided into four tiers, with each tier taking
priority over the lower tiers in the event appellants were successful in their
lawsuit against Halliburton and Ramco.








Appellee
became a third-tier investor when it signed three Claims Investment Agreements
(the AAgreements@) in which it agreed to invest a
total of $149,972.  Appellants agreed that if they made a cash recovery in
their lawsuit against Halliburton and Ramco, they would pay appellee its
initial investment, plus ninety percent of the amount of the initial
investment, plus an additional ninety percent of the initial investment for
every year that passed from the date of the agreement to a final recovery.[1] 
In addition, appellants and appellee agreed that A[i]f a final disposition or settlement
of the [Halliburton and Ramco] lawsuit fails to result in a cash recovery, as
defined herein, for whatever reason, then [appellants] shall have no obligation
to make any payment to [appellee] for any portion of the investor=s total return.@

Appellants= suit against Halliburton and Ramco
went to trial and the jury awarded damages against Halliburton in excess of $64
million and against Ramco for $6.4 million.[2] 
Appellants and Halliburton subsequently entered into a settlement agreement,
the terms of which are undisclosed.[3]  Following
the settlement, appellants contacted their litigation investors, including
appellee, and attempted to negotiate a reduced payment contrary to the terms of
the Claims Investment Agreements.  Appellants alleged for the first time in
letters to the investors that the Claims Investment Agreements, which they
prepared and provided to the investors, were contrary to public policy and
unenforceable under Texas law.  Appellee refused appellants= offer of reduced payments and filed
suit against appellants asserting causes of action for breach of contract,
fraud, and conspiracy to breach the Agreements and to commit fraud.  Appellee
also sought a declaration that the Agreements were valid and enforceable, and
that the transactions were not loans.








On May
17, 2006 the trial court signed its Amended Order Granting Partial Summary
Judgment in appellee=s favor as to appellee=s breach of contract claims against
appellants.  In that order, the trial court found that the Agreements were
valid and enforceable, and that appellants had breached them.  On June 6, 2006,
the trial court granted appellee=s motion for summary judgment as to
appellee=s breach of contract damages and
attorneys= fees.  The trial court awarded appellee $440,315.00 in contractual
damages and $130,641.75 in attorneys= fees.[4] 
On July 10, 2006, the trial court severed all claims except appellee=s breach of contract claim against
appellants into a separate lawsuit making the summary judgments on appellee=s breach of contract claim final and
appealable.  This appeal followed.

Discussion

This is a summary judgment case.  In their first issue,
appellants assert the trial court erred when it concluded that the Agreements
were valid and enforceable,  and that appellants, by not paying appellee the
contractually agreed amount, breached the Agreements.  In their second issue,
appellants assert the trial court erred when it granted appellee=s motion for
summary judgment and awarded appellee
its attorneys= fees because (1) there were genuine issues
of material fact regarding the reasonableness of the fees; and (2) appellee
failed to segregate its attorneys= fees. 

A.      The
Standard of Review

The movant for summary judgment has the burden to show
there is no genuine issue of material fact and is entitled to judgment as a
matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985). In determining whether there is a genuine fact issue precluding summary
judgment, evidence favorable to the non-movant is taken as true and the
reviewing court makes all reasonable inferences and resolves all doubts in the
non-movant=s favor. Id. at 548B549.  If there is
no genuine issue of material fact, summary judgment should issue as a matter of
law.  Hasse v. Glazner, 62 S.W.3d 795, 797 (Tex. 2001).  We review a
trial court=s summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).








B.        Breach of Contract

In their
first issue, appellants contend the trial court erred in finding a breach of
contract because (1) the Agreements were usurious loans, (2) if the Agreements
were not loans, they were void, unregistered securities, and (3) the Agreements
were unenforceable because they violated public policy.  In Anglo-Dutch
Petroleum Int=l, Inc. v. Haskell, 193 S.W.3d 87 (Tex. App.CHouston [1st Dist.] 2006, pet.
denied), the First Court of Appeals addressed these precise issues.  In Haskell,
several other investors signed Claims Investment Agreements with appellants
that were virtually identical to the Agreements signed by appellee.  The only
differences between the Claims Investment Agreements in Haskell and
those at issue here are the rate of return on the investment, the amount
invested, and the name of the investor.  The First Court of Appeals found the
Claims Investment Agreements did not meet the definition of a loan and were not
usurious transactions.  Id. at 95B101.  The court held that, for an
agreement to be usurious, three essential elements must be present: (1) a loan
of money, (2) an absolute obligation to repay the principle, and (3) the
extraction of a greater compensation than allowed by law for the use of money
by the borrower.  Id. at 96.  The court determined the Claims Investment
Agreements at issue in Haskell were not loans because there was no
obligation to repay the principle if there was no recovery in the underlying
lawsuit.  Id. at 101.

The
First Court further found that under the Securities Act of 1933 and the Texas
Securities Act that securities agreements are not automatically void when not
registered, but rather are voidable by the purchaser.  Id. at 102B03.  The court held that a seller of
an unregistered security lacks standing to bring this claim.  Id. at
103.  Therefore, even if the investment agreements could be considered
securities, the fact that they are not registered cannot be raised by appellants. 
Id.








Finally,
the court found the Claims Investment Agreements did not violate public
policy.  Id. at 103B05.  The court held that agreements that vest control over
litigation in uninterested third parties are against public policy, but that in
this case there was no evidence of investor control, such as the ability to
select counsel, direct trial strategy, or participate in settlement
discussions.  Id.

In its
response brief to this court, appellee argues appellants are collaterally
estopped by the First Court=s Haskell opinion from asserting that the contracts
are void as usurious loans, void as unregistered securities, void as against
public policy and/or are unenforceable.  On appeal, appellants contend the Haskell
opinion does not collaterally estop them from asserting defenses against
appellee because the doctrine of collateral estoppel only precludes
re-litigation of facts between identical parties.  We agree with appellee.

The
doctrine of collateral estoppel, or issue preclusion, is designed to promote
judicial efficiency, protect parties from multiple lawsuits, and prevent
inconsistent judgments by precluding re-litigation of issues.  Sysco Food Services,
Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994).  A party seeking to
assert the bar of collateral estoppel must establish that: (1) the facts sought
to be litigated in the second suit were fully and fairly litigated in the first
suit; (2) those facts were essential to the judgment in the first action; and
(3) the parties were cast as adversaries in the first action.  Id.  To satisfy the
third prong, strict
mutuality of parties is no longer required.  Id.  Instead, it is
only necessary that the party against whom the doctrine is asserted was a party
or in privity with a party in the first action.  Id. at 802.  In the case at bar, appellee seeks
to assert the doctrine of collateral estoppel against appellants.  Since
appellants were parties to the Haskell case, litigated and lost each of
the points raised in their first issue in this appeal in Haskell, and
those facts were essential to the judgment in Haskell, collateral
estoppel precludes them from re-litigating those same issues here.  We overrule
appellants= first issue.

C.        Attorneys= Fees








Texas
law does not allow the recovery of attorneys= fees unless they are authorized by
statute or contract.  Tony Gullo Motors I, L. P. v. Chapa, 212 S.W.3d
299, 310 (Tex. 2006).  Section 38.001 of the Texas Civil Practices &
Remedies Code provides that a successful party in a breach of contract action
may recover reasonable and necessary attorneys= fees.  Mullins v. Mullins,
889 S.W.2d 550,  554 (Tex. App.CHouston [14th Dist.] 1994, writ denied) (citing Tex. Civ.
Prac. & Rem. Code Ann. ' 38.001 (Vernon 1997)).  Attorneys= fees are not recoverable in an
action in tort however.  Knebel v. Capital Nat=l Bank, 518 S.W.2d 795, 803B04 (Tex. 1974).

Here,
appellee asserted tort causes of action against appellants in addition to its
claim for breach of contract.  Appellants contend that a portion of the trial
court=s summary judgment awarding attorneys= fees to appellee must be reversed
because the amount awarded is not reasonable and necessary, as appellee failed
to segregate its fees between those fees that were recoverable and those that
were not.  Appellee responds that the trial court properly awarded attorneys= fees only for appellee=s breach of contract claim.

As
evidence in support of its motion for summary judgment seeking attorneys= fees, appellee submitted the
affidavit of its lead counsel, Fred Hagans.  In response, appellants submitted
the affidavit of one of its attorneys, Bradley Hoover.  A summary judgment may
be based on uncontroverted testimonial evidence of an expert witness as to
subject matter concerning which the trier of fact must be guided solely by the
opinion testimony of experts, if the evidence is clear, positive and direct,
otherwise credible and free from contradictions and inconsistencies, and could
have been readily controverted.  Tex. R. Civ. P. 166a(c).  Therefore, we must first determine if Mr. Hagans= affidavit was controverted by that
of Mr. Hoover.








In his
affidavit, Mr. Hoover stated: AI have a preliminary opinion that the amount of attorneys= fees being claimed by [appellee]
appears to be unreasonable.@  An affidavit is insufficient unless the allegations
contained therein are direct and unequivocal and perjury can be assigned upon
it.  Brownlee v. Brownlee,  665 S.W.2d 111, 112 (Tex. 1984).  Because he
does not render a direct and unequivocal conclusion that the attorneys= fees sought by appellee were
unreasonable, Mr. Hoover=s affidavit lacks the necessary factual sufficiency to
constitute summary judgment evidence sufficient to raise a genuine issue of
material fact.  Id.   Therefore, we hold Mr. Hagans= affidavit was uncontroverted.

As Mr.
Hagans= affidavit was uncontroverted, we
next examine whether it was clear, positive and direct, otherwise credible and
free from contradictions and inconsistencies, and could have readily been
controverted.  Within his affidavit, Mr. Hagans initially stated: A[i]t is my opinion that attorney=s fees of $116,126.00 is a reasonable
fee for the prosecution and handling of [appellee=s] breach of contract claims through
the trial court in this matter.@  However, in a later paragraph, Mr. Hagans stated:

This case
involves claims of breach of contract, claims for declaratory relief and other
claims arising out of the same transaction at issue in connection with
[appellee=s] breach of contract claims such that the prosecution
of all of these claims entails proof or denial of essentially the same facts. 
All of [appellee=s] claims are, in my opinion, intertwined to the point
of being inseparable and therefore are Ainextricably
intertwined.@ (emphasis added)

 

In that same paragraph,
Mr. Hagans concluded:

In my
opinion, the time that has been spent and which will be spent on this case
through the trial court phase of this case will total several hundred
hours of lawyer time and would result in attorney=s fees in excess of $116,126.00 if [appellee] were billed by the hour
and the lawyers working on this case charged their standard and
customary rates for such work on this case.  (emphasis added)

 








Mr. Hagans= affidavit is inconsistent on the
issue of whether appellee was seeking the award of $116,126.00 in attorneys= fees exclusively for the prosecution
of the breach of contract claim, or for the handling of the entire case,
including tort claims, because the claims were inextricably intertwined.[5] 
Because of this internal inconsistency, Mr. Hagans= affidavit cannot support the trial
court=s summary judgment awarding attorneys= fees.  Tex. R. Civ. P. 166a(c).  Accordingly, we sustain
appellants= second issue.

Conclusion

We
affirm the summary judgments of the trial court to the extent they: (1) found
the Agreements were valid and enforceable; and (2) awarded $440,315.00 in
damages for appellee=s breach of contract claim.  We reverse that portion of the
trial court=s second summary judgment awarding attorneys= fees to appellee and remand that
issue to the trial court for proceedings consistent with this opinion.

 

 

 

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum
Majority and Concurring Opinions filed October 2, 2007.

Panel consists of Justices Anderson,
Fowler, and Senior Justice Hudson.(Fowler, J., Concurring).

 

 









[1]  The initial Claims Investment Agreement between
appellants and appellee, contained the following example:

For example only, if the Investor makes an investment
of $50,000 in one payment of $25,000 and another payment of $25,000, and if
Anglo-Dutch receives its Cash Recovery 700 days after the Investor paid its
first $25,000 payment and 660 days after Investor paid its second $25,000
payment, then the Investor shall be paid the total sum of $178,836, which is
calculated as follows:

 

(a)        $50,000 (being its Investment), plus

(b)        $45,000 (being an amount equal
to 90% of its Investment), plus

(c)        $43,151 (being $25,000 x 90% x
[700 days/365 days]), plus

(d)        $40,685 (being $25,000 x 90% x
[660 days/365 days]). 

 





[2]  Ramco appealed the judgment against it to this court
and we reversed the $6.4 million judgment and rendered judgment that appellants
take nothing.  Ramco Oil & Gas, Ltd. v. Anglo-Dutch (Tenge), L.L.C.,
207 S.W.3d 801 (Tex. App.CHouston [14th Dist.] 2006, pet. denied). 





[3]  While the terms of the settlement agreement are
confidential, appellants did not contend in the trial court or here that the
settlement amount is insufficient to trigger their duty to pay the third tier
investors the full amount owed under the terms of the agreements.  Instead,
appellants contend only A. . . that if [appellants] settled with Halliburton
and paid the litigation financiers at the contractual rates, [appellants]
believed there would not be enough left for it to stay in business as an oil
company.@ 





[4]  The trial court=s
summary judgment awarded $116,126 in attorneys= fees for trial and an additional $14,515.75 in the event of an appeal.





[5]  Generally speaking, attorneys= fees incurred in the prosecution of a tort claim are
not recoverable under Texas law.  Knebel v. Capital Nat=l Bank, 518
S.W.2d 795, 803B04 (Tex. 1974).  As a result, parties seeking to
recover attorneys= fees have always been required to segregate fees
between claims where fees are recoverable and claims where they are not.  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex. 2006).  An
exception exists to this general duty to segregate if the claims are
inextricably intertwined.  Id.  To establish that attorneys= fees are inextricably intertwined, the party seeking
the recovery of attorneys= fees must establish that discrete legal services
advanced both a recoverable and an unrecoverable claim.  Id. at 313B14.